Trimble *v*. American Sugar Refining Co.

ROBERT J. TRIMBLE

*v.*

THE AMERICAN SUGAR REFINING COMPANY.

[Submitted February 25th, 1901. Decided April 11th, 1901.
Filed June 4th, 1901.]

1. Where a stockholder owning a small portion of the stock of a corporation brings suit in equity for an alleged misconduct in the management of the corporation business, he must show a clear cause by distinct affirmative allegations, even if they include allegations of a negative character.

2. A bill by a stockholder owning a small portion of the stock of a corporation, complaining of the policy thereof, should allege that neither himself nor his predecessor in interest ever acquiesced in such policy, since he would be bound by such acquiescence.

3. A stockholder's bill which alleges that the authorized business of the corporation is the buying, refining and selling of sugar, but that the management is diverting its funds to the purchase, roasting and sale of coffee, is not sufficient to show that such act is *ultra vires*, but the portion of the articles of incorporation specifying the business of the company should be pleaded, since the allegation is but the pleader's conclusion as to the effect of such articles.

4. Where the allegations of a bill in equity are based on information and belief, a demurrer thereto is not an admission of the facts so pleaded.

5. A stockholder's bill asking for a discovery of the financial condition of the corporation, but which fails to allege that plaintiff has been refused such information, or an inspection of the corporation books, and which does not plead any portion of the articles of incorporation which relates to the stockholder's right of inspection, is not sufficient to authorize the granting of a discovery by a court of equity.

6. Where a stockholder wishes a discovery of the financial condition of the corporation, his remedy is not by bill in equity for discovery, but by *mandamus* to compel an inspection of the books, aided, if necessary, by a petition under the statute to compel the corporation to bring the books into the state for such purpose.

7. *P. L. of 1896 p. 293* requires directors of corporations to declare regular dividends of their accumulated profits, if any exist after reserving, over and above its capital, such sum as a working capital as may be fixed by the stockholders. A stockholder's bill alleged the payment of a large dividend, but that the corporation also had a large accumulation of profits which should be distributed as dividends, but it was not stated that such

Trimble *v.* American Sugar Refining Co.

sum was larger than the stockholders had fixed as a reserve.—*Held*, that the bill was not sufficient to show that such accumulated profits should be distributed among the stockholders, since it would be presumed that such sum was reserved by the stockholders as a working capital.

8. The mere fact that a corporation has a large amount of surplus does not entitle a single stockholder to compel its distribution by a bill in equity.

9. Where a corporation is engaged in competition with a rival corporation, and there is nothing to show bad faith or palpably bad judgment on the part of its directors, a court of equity, at the suit of a stockholder, will not enjoin it from selling its products for less than the cost thereof, since it is a question for the corporation, and not for the courts.

10. A stockholder cannot enjoin a corporation, which is engaged in refining and selling sugar, from selling its product below cost, on the ground that it is doing so for the purpose of forcing a rival concern into an unlawful combination, since neither of the corporations has a natural monopoly, and the public cannot object to their acting in combination.

On demurrer to bill.

The bill is filed by complainant, who alleges himself to be the owner of one hundred out of seventy-four thousand shares of the capital stock of defendant company, and seeks relief in this court against what he alleges to be the improper conduct of the company in the management of its business, by which his interests as a shareholder have been, or will be, prejudiced.

The allegations of the bill, so far as they are pertinent and relevant to the relief prayed for, may be briefly stated to be as follows:

That the company was organized January 15th, 1891, under the law of New Jersey.

"The objects for which the company was formed were the buying, refining and selling of sugar."

That the legitimate business of the company is extremely profitable, so that for a number of years prior to January 1st, 1900, the company has paid twelve per cent. on its common stock.

It owns sugar refineries in different states, and also owns all, or substantially all, the capital stock of various sugar refining companies, and absolutely owns and controls the assets, policy and business of the companies then owned (naming several of

Trimble *v.* American Sugar Refining Co.

them), but because the defendant company has never made a full exhibit to its stockholders, complainant cannot state with exactness the refining companies owned by defendant. Said company has never made any financial exhibit of its property and assets to its stockholders.

And further, "upon information and belief," that prior to January 1st, 1900, defendant had accumulated, and now has, many millions of undivided profits, so that, at the close of the fiscal year of the company, and after payment of full dividends on the preferred stock, and the reservation of a reasonable and proper working capital, there remains a surplus of undivided profits of many millions of dollars, which, of right, belongs to the common stockholders, and should be forthwith divided among them.

The existence of this surplus has been concealed by the company from its stockholders and from complainant, but that a discovery and inspection of the books of account of the defendant company and of the subsidiary corporations owned and controlled by it will disclose the existence of such surplus, the actual amount of which is at all times known to the company, officers and directors.

Heretofore the firm of Arbuckle Brothers has been engaged in the sale of coffee and sugar, and others of the public are engaged in the business of refining and selling sugar.

The present board of directors has formed the plan of bringing this company into a combination in restraint of trade and of competition, and to be a monopoly of the business of refining sugar in the United States.

Prior to January 1st, 1900, the directors of the company determined not to divide the aforesaid surplus among its stockholders, but to employ a large portion of the same in the business of buying and roasting and sale of coffee, so as to force Arbuckle Brothers into said combination, and to employ the surplus not, in fact, as working capital, but depreciating the price of refined sugar and selling the same at a loss, so as to discourage competition and bring about a combination in restraint of trade.

In its ordinary and lawful course of business defendant is

Trimble *v.* American Sugar Refining Co.

able to make an adequate profit and to increase its surplus, but the methods of the company are not now taken with a view to profit, but in an attempt to force an unlawful trust and combination, and complainant fears that, unless restrained, the defendant will either accomplish an illegal combination and monopoly, by which its franchises may be forfeited, or will altogether dissipate its surplus, and such use of it tends to the sacrifice and deprivation of the rights of the stockholders.

Prayer: That defendant may answer fully all the interrogations therein set forth:

1. What amount of the capital stock of the company is invested in refineries and real estate directly owned by said company?

2. What amount is invested in the stocks of other companies?

3. What are the names and locations of the companies and the amount of capital stock of each company in which the defendant company owns stock, and what is the amount of stock owned in each case?

4. What were the balance sheets of the defendant company at the close of each year's business from its incorporation to the present time?

5. What were the balance sheets of each of the companies owned or controlled by ownership of such, including all companies in which the defendant company owns a stock interest, giving such balance sheets from the close of the fiscal year of each in 1898 and 1899?

And the balances of said different companies at the close of the last fiscal year of the defendant company.

An injunction directed to the defendant company, its officers, servants and agents, enjoining them from continuing in the sale of sugar without profit or at a loss.

That the company may divide among its common stockholders the accumulated profits to them justly belonging, and may be required to desist and refrain from engaging in other business than that of buying, refining and selling sugar, in accordance with its franchises, and not for the purpose of destroying competition in restraint of trade, and for other relief.

To this bill defendant has interposed a demurrer for general

want of equity, which also, according to the rule, sets forth the special causes or grounds of demurrer, which are fully disclosed by the demurrer itself:

1. Generally, want of equity.

2. The discovery prayed for can be had by proceedings to inspect books.

3. The allegations of the bill as to defendant's attempt to form a trust or combination in restraint of trade are mere statements of legal conclusions, with no statement of facts to justify such conclusions.

4. Complainant does not aver that the acts complained of took place while he was a stockholder, or that he has ever complained of or remonstrated against them, or that such acts have caused any loss to complainant, or any impairment of the value of his stock.

5. Bill is contradictory and inconsistent, and seeks to enjoin complaints against the company with complaints against the directors.

6. Bill is wanting in certainty of statement, but consists of vague allegations of generalities without facts.

*Mr. Thomas N. McCarter, Sr.,* for the demurrant.

*Mr. J. B. Gleason* (of the New York bar), in support of the bill.

*Mr. Robert H. McCarter,* in reply.

PITNEY, V. C.

The cause of action attempted to be shown in the complainant's bill may be divided as follows: *First,* that the acts of the defendant in going into the coffee trade are *ultra vires,* in that they are not warranted by the objects of the corporation as set forth in the articles of association or certificate of incorporation; *second,* that the defendant has a large surplus in funds not necessary for use in its legitimate business, which it ought to divide and refuses to divide; *third,* that it has concealed its true situation from its stockholders, and *fourth,* that it is carry-

ing on the sugar trade and coffee trade in competition with a corporation known as Arbuckle Brothers, for the purpose of driving that corporation to unite and consolidate with the complainant; and that such action is contrary to public policy, and may result in the destruction of the defendant's corporate rights.

It is to be observed that the complainant is the holder of one seven-hundred and fortieth part of the capital stock of the company, a trifle less than one-seventh of one per cent. of the whole issue; and it does not appear that any other stockholder is dissatisfied with the conduct of the business of the company in respect to the matters complained of by the bill.

Admitting that the holder of so small a part of the stock is entitled to be heard in this court for the correction of any real grievance he may suffer by the misconduct of the majority, yet I think it is the duty of the court to require that he should show a clear case by distinct affirmative allegations, even if they should necessarily include some of a negative character. In short, he must anticipate and exclude all reasonably probable conditions which may bar his relief.

With this preliminary observation, I further remark that the bill does not state at what time complainant acquired the one hundred shares of stock which he holds, and it is common knowledge that the stock of this company, and many others of the same class, is daily dealt in on the Exchange. For aught that appears, he may have acquired it a very short time before the filing of the bill, from a holder who had acquiesced in everything that the company had done up to that time and in the policy the carrying out of which the complainant seeks to enjoin. That such acquiescence would bar the original holders of the shares now held by the complainant, if he knew of it, is perfectly well settled. It is necessary, on this point, only to refer to the case of *Rabe & Cross* v. *Dunlap, 6 Dick. Ch. Rep. 40.* And it seems to me that where a person holding so small a fraction of the capital stock as the complainant represents here asks to interfere with a particular phase of the management of the corporation, which is presumably satisfactory to all the other stockholders, he ought to show affirmatively that neither he nor his predecessor in title has acquiesced in the policy of which

he now complains, for I think he would be bound by the acquiescence of his predecessor in title.

But taking up the matters complained of—*first,* with regard to the action (dealing in coffee) complained of being *ultra vires.* The only allegation in the bill is in these words: "That the objects for which the company was formed were the buying, refining and selling of sugar." Whether those be the sole objects of the corporation depends entirely upon the language of the articles of association, and it is for the court to determine, from reading those articles, what, upon a fair construction of the language, are the legitimate objects of the company. It seems to me that a mere allegation of that sort is insufficient, for the reason that the language is not exclusive. The allegation may be entirely true, and yet there may be other objects which the company may properly pursue without being charged with going beyond the power given to it by the articles of association. In other words, the allegation is not exclusive of the company having the power to engage in other cognate pursuits. It is a matter of common knowledge that the articles of association, or, as they be otherwise called, the certificate of incorporation, oftentimes do contain provisions conferring the right to engage in pursuits other than those which may be deemed the principal object of the company. The allegation, at least, amounts to no more than an allegation in general terms of the construction put by complainant on the defendant's articles of association, without setting them out in full.

Another allegation, necessarily admitted by the demurrer, is that the business of the company is extremely profitable; that it has been earning and paying twelve per cent. dividend for its common stock; that it owns a great many sugar refineries, and the capital stock of other sugar refineries; and it alleges that the defendant has never made any financial exhibition of its property and assets to its stockholders.

All but one of the other allegations of the bill are based upon information and belief, and the defendant argues that an admission of the complainant's information and belief on that subject is not an admission of the fact so stated. In this I think it is substantially sustained by authority. I refer to

*Story Eq. Pl.* §§ *241, 256,* and cases cited in a note to section 241; *Egremont* v. *Cowell, 5 Beav. 620* (at *p. 623*); *S. C.,* (reported *sub nom., Vickers* v. *Cowell*), *7 Jur. 51.* There the allegation was that the "defendant Greenwood alleged, and the plaintiff believed, the fact to be true." Of this, Lord Langdale remarked: "It is not a sufficient allegation to say that one defendant alleges, and the plaintiff believes, his statement to be true. The defendant may allege that which is quite false, and the plaintiff may believe it to be true, but this is not an allegation of the fact."

Among the American cases cited in a note to section 241 of *Story Eq. Pl.* are *Cameron* v. *Abbott, 30 Ala. 416; Lucas* v. *Oliver, 34 Ala. 626;* and see *Uxbridge* v. *Staveland, 1 Ves. Sr. 56,* cited in note to section 256.

But waiving that defect, let us consider their effect. The first of these allegations on information and belief is that the company has on hand a large accumulation of profits, amounting to many millions of dollars, which, it is alleged, should be immediately divided among the stockholders; that the existence and amount of this surplus is concealed from the stockholders; and upon this allegation discovery of the financial condition of the company and the amount of its surplus is asked. There is no allegation that complainant has asked for, and been refused, the information he asks by his bill to be discovered, or that he has been refused inspection of the books of the company.

Here, again, it is to be observed that the bill is silent as to any provision in the articles of association or by-laws on this subject. It is common knowledge that it might be injurious to the interests of the company if every stockholder, however small, had the privilege of unlimited inquiry at all times into the details of a business such as that carried on by the defendant; and that such companies frequently provide, by their articles of association, for protection against such inspection. The danger is that rival traders may use the privilege of a stockholder to pry into and learn the secrets of the company's business.

These considerations lead to the conclusion that the bill shows no reason for the interference of this court in the respect now

under consideration; and further, that the complainant's remedy is by *mandamus* in a court of law to compel defendant to permit an inspection of the books by the complainant, aided, if necessary, by a petition, under the statute, to this court or any other court, to compel defendant to bring the books into this state for inspection. *Stettlauer* v. *Scranton Co., 15 Stew. Eq. 46; Rosenfeld* v. *Einstein, 17 Vr. 479; Huylar* v. *Cragin Cattle Co., 13 Stew. Eq. 392; S. C., 15 Stew. Eq. 139.* These cases tend to show that the utmost relief to which complainant is entitled is access to the books of the company for purposes of inspection.

Further, if the complainant may ask for and obtain an elaborate statement of the affairs of the defendant, every other stockholder may do so, and the result would be exceedingly burdensome to the company and tend to display to the public the condition of its affairs to an extent that would be prejudicial to its interests.

The next matter for consideration is the right of the complainant to a dividend. The statute on that subject is section 47 of the act of 1896 (*p. 293*), which provides as follows:

"The directors of every corporation created under this act shall, in January in each year, unless some specific day or days for that purpose be fixed in its charter or by-laws, and in that case then on the days so fixed, after reserving over and above its capital stock paid in, as a working capital for said corporation, such sum, if any, as shall have been fixed by the stockholders, declare a dividend among its stockholders of the whole of its accumulated profits exceeding the amount so reserved, and pay the same to such stockholders on demand; provided, that the corporation may in its certificate of incorporation or in its by-laws give the directors power to fix the amount to be reserved as a working capital."

There is no allegation in the bill that the defendant corporation has not declared regular dividends, but the contrary appears; nor is there any allegation that the accumulated profits now on hand, as alleged in the bill, are greater than what is reserved and fixed by the stockholders as a working capital. The presumption must be that the action of the company in that respect is satisfactory to the majority of the stockholders, and the mere fact, if it be true, that it has a large amount of

surplus, is not sufficient, of itself, to give a single stockholder a right to come into court and compel a dividend of that surplus.   The cases relied on by the complainant are clearly distinguishable.   *Fougeray* v. *Laurel Springs Land Co., 5 Dick. Ch. Rep. 185; S. C. on appeal, 5 Dick. Ch. Rep. 756,* was a case of three stockholders in a real estate speculation, each holding an equal amount of stock; two fraudulently combined against the third to prevent him from getting any share of the profits, and the court made a decree that there should be a dividend.   That case has no application here.

There remains to be dealt with the allegation that the defendant is selling sugar below market rates, and therefore, in a mercantile sense, below cost and at a loss, for the purpose of breaking down a rival concern, Arbuckle Brothers, and compelling the latter to combine with defendant in unlawful restraint of trade; and the particular prayer is that it may be restrained from selling sugar at a loss.

Now it is to be observed that the purpose of defendant's organization is to make money; that, by the allegation of the bill, it has been well managed for that purpose.   There can be no presumption that, in the judgment of its directors, the course complained of is not calculated, in the end, to make money.   The fair inference is that Arbuckle Brothers must have commenced the mercantile fight by underselling the defendant, and then that the defendant retaliated.   This is, by common knowledge, the natural and usual result.   And it may be here observed that one cannot but suspect, at least, that the bill is promoted by Arbuckle Brothers.   How far this destructive competition may be properly carried on without injury to the corporate interests is a concrete question to be decided by the parties in interest in each particular case.

It is supposed that such competition inures to the benefit of the public.   Be that as it may, no case has been cited in support of the proposition that a court of chancery ought to restrain such competition in a case like this, unless it appears that the directors are not acting in good faith for the best interests of the corporation, or, possibly, that they are plainly mistaken in their judgment—so plainly as to render the mistake palpable

to the court. The allegations of the bill do not show any such lack of good faith or clear mistake of judgment.

But, says the complainant, the result of a consolidation of the two companies will be an illegal combination in restraint of trade. On this topic I refer to what was said by me, and which, presumably, had the approval of the court of errors and appeals, in the case of *Meredith* v. *Zinc Company, 10 Dick. Ch. Rep. 211* (at *p. 221,* bottom, and *p. 222*). The defendant is engaged in a business that does not include the exercise of any public franchise, and it may do what any individual may do. Such was declared to be the law in the case of *Attorney-General* v. *American Tobacco Co., 10 Dick. Ch. Rep. 352* (at *pp. 363, 364*).

Neither of the companies mentioned here has any monopoly of either sugar or coffee. The world's product of each is immense. Any person can go into the market and buy either of them in unlimited quantities. Either of the companies mentioned in the complainant's bill may stop manufacturing at any time they choose, and the public·has no right to complain. Either of them may sell their goods at such price as they choose to put on them, and the public has no right to complain. There can be, in my judgment, no foundation, either in morals or law, for interfering with the liberty of the citizen who owns a factory to operate it or not as he may choose, and to sell his goods or not as he may choose, at such price as he may choose. In other words, as I remarked in *Meredith* v. *Zinc Company:* "By the law of the land" the defendant and Arbuckle Brothers "have the right to exercise their own judgment as to when, if ever, and how they will spend their money in preparing their property for market and rendering it fit for use by mankind. I am unable to find any foundation, either in law or in morals, for the notion that the public has the right to have these private owners of this sort of property continue to do business in competition with each other. No doubt the public has resonable ground to entertain the hope and expectation that its individual members will generally, in their several struggles to acquire the means of comfortable existence, compete with each other. But such expectation is based entirely upon the exercise

of the free will and choice of the individual, and not upon any legal or moral duty to compete, and can never, from the nature of things, become a matter of right on the part of the public against the individual." In short, I can see no more reason in law and morals why these two corporations may not consolidate and combine than that two individuals competing for the market may not consolidate their business and form a partnership. This disposes of all the matters set up in the bill and insisted upon at the argument, and I find in them no ground for equitable relief, and will advise an order that the demurrer be sustained and the bill be dismissed, upon the usual terms.