J. ASPINWALL HODGE et al.

*v.*

UNITED STATES STEEL CORPORATION et al.

[Filed November 22d, 1902.]

1. Where a stockholder in a corporation purchased shares from other stockholders, who had assented to a plan for the retirement of a part of the corporation's preferred stock prior to the transfer, the transferee is not entitled to a preliminary injunction against the execution of the plan based on his ownership of the stock so transferred.

2. A stockholder of a corporation is not entitled to sue to restrain the corporation and its directors from carrying out a plan for the retirement of part of its preferred stock by the issuance of bonds, unless he is the owner of shares standing in his name on the books of the company at the time of filing the bill.

3. A decision by the court of errors and appeals in a suit to restrain the retirement of the preferred stock of a corporation is binding on the court of chancery in a subsequent suit by another stockholder for the same relief as to all the issues raised and decided on such appeal.

4. Where in a prior suit to restrain the retirement of a portion of the preferred stock of a corporation the bill alleged that the company had filed the certificate required by the act authorizing the retirement, and such allegation was admitted by the answer, the question of compliance with the act was not involved in such suit, and was not, therefore, affected by the judgment therein.

5. The act of 1896 authorizes corporations to reduce their stock by purchasing shares for retirement, without conditions or limitations as to the financial condition of the company. The act of 1902 provides that where corporations have issued preferred stock they may redeem or retire such stock on certain conditions.—*Held*, that as to corporations having preferred stock which did not meet the requirements of the act of 1902 the act of 1896 was repealed thereby, and no retirement of such stock could be had of such corporation under such act.

6. The act of 1902 authorizes a corporation having preferred stock to retire the same, provided its assets are of a certain value; and the Corporation act (section 18) declares that the preferred stock of the corporation cannot exceed two-thirds of its capital stock paid for in cash or property, which shall be non-assessable for debts.—*Held*, that a preferred stockholder in an action against the corporation to restrain the retirement of preferred stock was estopped to assert that the valuation on which his stock was issued was an overvaluation under the statute, and that he could only question such valuation by showing a loss or shortage of assets arising subsequent to the issuance of his stock.

Hodge *v.* United States Steel Corporation.

7. The act of 1902, prescribing the conditions on which corporations having preferred stock may retire the same, declares that every corporation that shall have issued preferred stock entitling the holder to receive dividends at a rate exceeding five per cent. per annum, and that shall have continuously declared and paid dividends at such rate on such preferred stock for a period of at least one year next preceding the meeting at which the resolution authorizing the retirement is adopted, is entitled to retire such stock.—*Held,* that the payment of dividends in order to be continuous under such statute, and cover the entire period, must begin at or before the period and must include the last of the regular or continuous payments before the end of the period, and hence, where a corporation paid quarterly dividends on its preferred stock, it must have declared and paid out of its earnings five regular dividends before it is entitled to retire its preferred stock under the statute.

On application for preliminary injunction, heard on bill, amended bill and affidavits, answer to bill and amended bill and affidavits, and affidavits in reply.

*Mr. Robert H. McCarter, Mr. Alan H. Strong* and *Mr. Frank Bergen,* for the complainants.

*Mr. Richard V. Lindabury* and *Mr. Charles L. Corbin,* for the defendants.

EMERY, V. C.

This is an application for a preliminary injunction on a bill filed by stockholders of the United States Steel Corporation to restrain the retirement or redemption of preferred stock by issuing bonds of the company therefor. The plan or scheme for retirement is the one which was in question on the bill filed by Mrs. Berger against the corporation, and the details of the plan were given by me in my opinion in that case (*18 Dick. Ch. Rep. 506*) and need not be repeated, except so far as may be necessary for the purpose of indicating the circumstances in which the present suit differs from the Berger suit, and for referring to a feature of the plan which was overlooked in my opinion filed in that suit.

Three complainants are named in the bill, J. Aspinwall Hodge, as the owner of one hundred shares of the preferred stock; William R. Curtis, as the owner of two thousand shares, and Bernard

Hodge *v.* United States Steel Corporation.

Smith, as the owner of five hundred shares. The affidavits show that the complainant Hodge was the owner of record of one hundred shares of preferred stock, bought about a year before the proceedings for conversion were begun, and that he did not assent to the plan. As to the complainant Smith, the affidavits show that at the time of filing the bill he was not the owner of any shares of stock, except shares whose previous owners had assented to the plan. Complainant Curtis, at the time of the bill, was not, nor has he ever been, the owner of record of any shares, nor is there any affidavit of ownership of shares made by him. In the absence of such affidavit showing his ownership and the certificate or certificates of shares which he holds, it cannot be known whether or not the previous holders of his shares, or any of them, have assented to the plan. If such previous holders of either the Smith or Curtis shares have assented, then neither Smith nor Curtis is entitled to a preliminary injunction against the execution of the plan assented to, so far as their rights rest on the ownership of these shares. *Trimble* v. *American Sugar Refining Co., 16 Dick. Ch. Rep. 340 (Vice-Chancellor Pitney, 1901).* The by-laws of the company provide (article 5, section 2)

"that shares in the capital stock of the company shall be transferred only on the books of the company by the holder thereof in person, or his attorney, upon surrender and cancellation of certificates for a like number of shares."

My opinion is that a suit of the present character must be based upon an ownership of record at the time of filing the bill, and that the ownership of shares standing in the name of another will not be sufficient to maintain the suit. The suit, it will be observed, is not one which is brought against a third person to assert the general right of a holder of stock considered as property where ownership of shares transferred in blank and not actually transferred on the books might be sufficient evidence of ownership of the stock, but it is a suit brought by a complainant solely in the character of a stockholder, against the company itself and its directors, to restrain the violation of his rights as a stockholder and to restrain proceedings alleged to be *ultra vires* and

fraudulent against the company. This can be done only by a stockholder who holds a complete title as stockholder under the by-laws of the company, or who, being the owner of the stock, has done everything within his power to complete the title. For the purposes of this motion, complainants' case must therefore be considered as based solely on the right of the complainant Hodge as a single stockholder filing a bill on behalf of himself and other stockholders.

The Berger bill was filed by the complainant solely on her own behalf and was filed against the corporation itself and the firm of J. P. Morgan & Company to enjoin the issuing of bonds for stock, under the contract called the "bankers' contract," and no directors of the company were made parties as such, but it was charged that four of the firm were directors at the time of the contract, and its validity was assailed upon that ground. The bill in that case sought relief upon four grounds—*first,* that the plan, if carried out, would impair complainant's vested rights as a stockholder; *second,* that the plan of issuing bonds to redeem or retire stock was *ultra vires* and void against complainant or any dissenting stockholder; *third,* that the plan was ruinous and disastrous and imperiled the value of complainant's stock, and *fourth,* that four members of the bankers' firm were directors of the corporation, and that the compensation of $8,000,000 which might be received by the bankers under the bankers' contract, was without consideration and illegal, and that the scheme was devised to secure exorbitant commissions by this firm. The answer accepted these issues and claimed (1) that the plan of conversion did not impair complainant's vested rights; (2) that it was not *ultra vires,* and asserted (3) that the plan, including the payment of the compensation named, was beneficial and reasonable. As to the validity of the bankers' contract, in which four of the directors were interested as members of the bankers' firm, it set up a by-law of the company, under which any contract submitted by directors to the stockholders, when approved by a majority of the stockholders, was expressly declared to be valid. They claimed that this by-law applied to the contract, and that the contract had been thus approved.

I reach the conclusion that the first objection taken by complainant in the Berger suit was well founded, and that her vested property rights were impaired. For that reason I did not consider the other objections, except that in the oral announcement of my decision I stated that, as the case then stood before me, the question of the reasonableness of the compensation to the bankers, if it could be raised at all, was not a matter to be determined on *ex parte* affidavits on preliminary injunction, and must certainly be reserved until final hearing upon full proofs.

Upon the appeal, the court, as to these issues involved in the *Berger Case,* decided—first, that the plan of retiring stock by issuing bonds did not impair complainant's vested rights; second, that it was not *ultra vires* or void, but was the exercise of a power to purchase stock for retirement, given by the General Corporation law of 1896, and also of a power to retire or redeem stock out of bonds, given by the law of 1902. As to the reasonableness of the plan and of the compensation paid to the bankers, the court declared that "in the absence of fraud it is not the province of the court to substantiate its judgment for that of the directors and shareholders, and declare that a less expensive or more beneficial plan could have been resorted to successfully.

As to the fourth objection set up in the Berger bill, viz., that the interest of four of the directors in the bankers' contract made it invalid, as against the company or any dissenting stockholder, the court, in its opinion, did not expressly consider or decide the question of the effect of by-laws of this character, but the following clause, near the close of the opinion, would seem to refer to the by-laws. Mr. Justice Van Syckel says: "Nor can any feature of the plan, expressly authorized by the by-laws adopted before complainant became a shareholder, be the subject of judicial control, so long as it is not inimical to any constitutional mandate, the end to be attained being, as in this case, duly authorized by law."

The present bill is filed not only against the corporation and the bankers, but also against all of the directors of the corporation, and the grounds of relief set up in the bill and amended

bill, stated generally, are—*first,* that the plan interferes with complainant's right of property or vested rights; *second,* that it is *ultra vires* and void; *third,* that the defendant company cannot issue the bonds for stock under the law of 1902, because it has not fulfilled the requirements of that law, either as to the payment of dividends or as to the value of assets; *fourth,* that the scheme was disadvantageous and would seriously damage the corporation and the stockholder, and that the compensation to the bankers was exorbitant; *fifth,* that the action of the directors in passing the resolutions for the plan and approving the contract was fraudulent and void, because fifteen or more of the board of directors (twenty-four in number) were interested in the syndicate which was formed to assist in carrying out the bankers' contract and to share its profits, and *sixth,* that the plan was never properly or legally ratified by the two-thirds vote of the stockholders of the corporation, required by the Corporation act, inasmuch as the votes upon the stock held or controlled by the bankers' firm and members of the syndicate must be counted to make up the necessary two-thirds, and without these votes the requisite number did not approve the reduction of stock.

As to the first ground—the impairment of a stockholder's vested or property rights—the decision in the *Berger Case* that the plan does not impair them is conclusive, and controls the decision upon this motion. As to the second ground—that the issuing of the bonds to retire stock was *ultra vires*—the decision also controls this case so far as relates to the construction of the powers to issue bonds for stock, which are conferred by the General Corporation law of 1896 and the act of 1902—that is, the right to purchase stock for retirement on credit, by issuing bonds secured by mortgage. The third ground urged in this suit was not raised or in issue in the Berger suit. This ground is that the bonds cannot be issued, because the corporation, at the time of directing their issue, had not complied with the conditions required by the act of 1902. In the Berger suit the bill alleged (paragraph 4) that *pursuant to the provisions* of the act of 1902, the company filed a certificate, as provided for in that act. This allegation was admitted by the answer, and

therefore, in the *Berger Case,* any question as to whether the requirements of the act of 1902 had been complied with was not only not involved, but was expressly excluded from considera-- tion or decision by the pleadings and record. This question, therefore, is open for decision in this case, and it is the question which must be first considered on this application. This re- sults from the fact, under the decision of the court on appeal, as to the statutory power of corporations to issue bonds to re- tire stock, it is held (1) that the power was given by the pro- visions in the act of 1896, which authorized a company to re- duce its stock "by purchasing certain shares for retirement," and that this power given by this act of 1896 was conferred in general terms and without any express statutory conditions or limitations as to the financial condition of the company; · (2) that the entire scope and effect of the act of 1902 was only that of fixing express statutory conditions or requirements to a power previously existing under the act of 1896, which condi- tions and requirements are applicable to all companies having preferred stock, and (3) that the necessary effect of this subse- quent act expressly limiting and restraining the power of con- version, previously conferred in general terms, was to repeal, by implication, the previous law of 1896 so far as it allowed the conversion of preferred stock without conditions, and to prevent such conversion unless the requirements of the law of 1902 were complied with. The memorandum decision filed before the opinion expressly declared that the plan in question was valid under the act of 1896 and was also valid under the act of 1902, but the memorandum did not give the views of the court as to the effect of the law of 1902 upon the previous law. The language of the full opinion is, however, clear on this point and controls this application. Mr. Justice Van Syckel says, in the opinion, "that while under the Corporation act of 1896 every corporation which had issued preferred stock might, by pur- chase of shares, convert its preferred stock into bonds without regard to whether or not it was in the sound financial condition contemplated by the act of 1902, the act of 1902 is [a] restrain- ing and not an enlarging act. It provides the conditions upon which preferred stock may be purchased and retired by mort-

gage bonds, and thereby excludes the adoption of any other method; *expressio unius est exclusio alterius.* The prescribed conditions must exist to render the retirement by purchase of shares lawful;" and again, "the fact that the act of 1902 *excludes all other methods for retiring shares by purchase,* and that it cannot be applied unless it is made to appear that the assets, after deducting the amount of indebtedness, at least equals the amount of preferred stock outstanding, is in the public interest for the protection of creditors." As applied to corporations which did possess the requirements of the act of ·1902, and, reading the memorandum decision and the opinion together, it is held that both acts still continue valid and in force. The issue of bonds for stock was held to be valid in the *Berger Case,* "as the purchase of certain shares for retirement," under the act of 1896, and also "as the retirement or redemption of stock out of bonds or the proceeds of bonds," under the act of 1902. This was because, in that case, the fulfillment of the requirements of the act of 1902 was not questioned or was admitted. As applied to those corporations which have pre- ferred stock and which do not meet the requirements of the act of 1902, the previous act of 1896 does not continue in force, but is repealed by the subsequent act. The result of this construction as to the two statutes, therefore, is that if the defendant corporation does not meet the requirements of the law of 1902 it has no power to issue the bonds under either law.

In the briefs submitted after the memorandum decision, but before the full opinion, it was contended by defendants' counsel that as the memorandum decision declared the issue was valid under the law of 1896, as well as under the law of 1902, the question of meeting the requirements of the law of 1902 was not important or decisive. But the opinion of the court, showing precisely the relation of the two laws, and the express declaration that all other methods of retiring preferred stock by purchase are now excluded by the act of 1902, and that corporations must now have the requirements of this latter act, renders this view untenable, and makes the question whether the corporation does meet these requirements of the act of 1902 the first question to be determined. As this is a purely legal question,

involving the construction of a statute, and has been fully argued, it should be decided on this application, and there is no reason for withholding decision for fuller consideration at final hearing. The conditions or requirements of the act of 1902 entitling corporations that have issued preferred stock to redeem and retire the preferred stock are four in number, and it is claimed by complainant that two of ·these conditions have not been met. The first requirement not met, as complainant claims, is that the company, at the time of the meeting, had not paid dividends for the time required by the statute, and the proceedings to retire the stock were therefore prematurely taken. The second requirement of the act not met, as complainant claims, was the condition relating to the value of the assets required.

As to the assets, the act of 1902 requires that at the time of the meeting the assets of the company,

"after deducting the amount of its indebtedness, shall be certified, in the judgment of the officers making such certificates, to be at least equal to the amount of preferred stock issued and outstanding."

The designated officers—the president and secretary—have filed this certificate, and upon the affidavits filed there can be no question whatever as to their honesty and good faith in making this certificate as to value. It was held by the court, on appeal, in the *Berger Case,* that this certificate of the officers was not conclusive evidence of the financial condition of the company, but might be shown to be false, and action in pursuance of it arrested. The question therefore is whether, in relation to the value of the assets the complainant has shown such a case as entitles him to restrain the issue of the bond pending the final hearing.

The affidavits filed by the defendant company on this question of the value of the assets are full, complete and detailed, and are made by persons entirely familiar with the property or portions of the property as to whose value they affirm. The affidavits as to value filed by complainant are, on the contrary, general, vague and made without special knowledge or examination, and the credibility of the principal affiant on the part of the complainant

is seriously impaired by his own admissions in his latest affidavit. Upon these affidavits, as to value, I would not be justified in enjoining the issue of the bonds pending the final hearing.   The matter principally relied on at the argument for supporting the claim that the assets were overvalued, were the statements made by the president, Mr. Schwab, in the course of a litigation two years previous.  These statements were made, however, in reference to the value of the assets of the Carnegie Steel Company, Limited, which comprise only a portion of the assets of the steel corporation.   As to this contention, two observations may be made—first, the previous statements of its president are not binding on the corporation or admissible against it, except as affecting the credibility of this single witness, and the only question is whether there is any ground for holding that the credibility of his present affidavit, as to value, is impeached.   I think there is not; second, the entire assets of the steel corporation were subsequently made the basis for its issue of preferred stock, part of which complainant holds.   Such preferred stock, under the Corporation act (section 18) cannot exceed two-thirds of the capital stock paid for in cash or property, and is not assessable for debts.   Complainant, therefore, in attacking the valuation of the property upon which the preferred stock of the corporation was issued to him and to others as full-paid stock, is questioning the valuation upon which his own stock was based.   A creditor applying for injunction under the act of 1902 might question this valuation of the property for which the preferred stock was issued, and it may be that on final hearing it might be concluded that a preferred stockholder, whose stock was based on the alleged overvaluation, might also be held entitled to question it.   My present view, however, is that the preferred stockholder, as against the company, cannot be heard to assert that a valuation which is substantially the valuation upon which his own stock was issued, is an overvaluation under the statute, and that he must show a loss or shortage in the assets arising subsequently to the original issue of his stock, in order to entitle him to question the valuation under the statute.   This objection to issuing the bonds is therefore overruled and a preliminary injunction should not be based thereon.

As to the dividends, the language of the act is:

"Every corporation organized under this act * * * that shall have issued preferred stock entitling the holders thereof to receive dividends at a rate exceeding five per centum per annum, and that shall have continuously declared and paid dividends at such rate on such preferred stock for the period of at least one year next preceding the meeting," &c.

The Corporation act provides (section 30) that "no corporation shall make dividends except from the surplus or net profits," and by the amended certificate of incorporation of the company it was provided (article 4):

"The holders of the preferred stock shall be entitled to receive, when and as declared, yearly dividends at the rate of seven per cent. per annum, payable quarterly on dates to be fixed by the laws."

The by-laws provide (article 5, section 5):

"The board of directors may declare dividends from the surplus or net profits of the company over and above the amount which, from time to time, may be fixed by the board as the amount to be reserved as working capital. The dates for the declaration of dividends upon the preferred stock and upon the common stock of the company shall be the days fixed by the by-laws for the regular monthly meetings of the board of directors in the months of April, July, October and January in each year, on which days the board of directors, in its discretion, shall declare what, if any, dividends shall be declared upon the preferred stock, and the common stock shall be payable quarterly on the sixth Wednesday next after the several dates of the declaration thereof."

The company was incorporated on February 25th, 1901, by the filing of its original certificate of incorporation. An amended certificate was filed April 1st, 1901. The first quarterly dividend on the preferred stock was declared on July 2d, 1901, and was payable and paid on August 7th, 1901; the second quarterly dividend was declared October 1st, 1901, and paid November 6th, 1901; the third, declared January 7th, 1902, and paid February 13th, 1902, and the fourth quarterly dividend was declared April 9th, 1902, and paid May 15th, 1902. The meeting of the stockholders which authorized the redemption of the preferred stock, was called for May 19th, 1902, and was then held, and the resolution for retirement of stock was

then adopted.  The duration of the period from the time of the first declaration of a dividend to the date of the meeting was therefore forty-four days less than one year, and from the time of the first payment of a dividend was eighty days less than one year.  The question is, was the meeting prematurely held, and, under the statute, could a meeting to retire the stock and issue bonds be lawfully held before the expiration of a year from the time of the first payment of a dividend, being a year from August 7th, 1901?  The language of the statute on this point is:

"Every corporation  *  *  *  that shall have continuously declared and paid dividends at such rate on such preferred stock for the period of at least one year next preceding the meeting."

This clause would seem clearly to provide two requirements as to the payment of dividends.  The first is the *continuous payment* of dividends.  Payments of dividends are continuous when they are successively and regularly made according to the charter or by-laws.  Plainly, no less than two payments can meet the requirements of continuous payments under the statute.  The second requirement relates to the duration or length of time for which these continuous payments must be made.  The provision as to these is that the continuous payments shall be made for the period of at least one year next preceding the meeting. If the continuous payments are to cover the entire period, then, plainly, a payment must be made at or before the beginning, and must include the last of the regular or continuous payments before the end of the period.  In no other way can the period be covered by the continuous successive acts required. This is a familiar construction of statutes as to the computation of time when a period fixed by the statute is to be covered by continuous successive acts, and it has been constantly applied in this state in construing statutes, where such continuous successive acts for a fixed term are to be done or performed.  The construction of the acts relating to public sales of real estate is an illustration of the application of the principle.  These acts require, among other things, publication of notice of sale "at least four weeks successively, once a week, next preceding

the time of sale." This has always been construed as requiring a publication at or before the beginning of the four weeks next preceding the sale, as well as in the last of the four weeks next preceding the sale, in order that the publication may be made "for the period" and in each week of the period. In *Parsons v. Lanning, 12 C. E. Gr. 70 (Chancellor Runyon, 1876),* the first publication was made twenty-six days before the sale, but there were four publications, once in each week. The advertisement was held invalid as not being made "four weeks next preceding the sale." In *State, Barkley, pros., v. Elizabeth, 12 Vr. 517 (Supreme Court, 1879),* an act authorizing sale of lands for assessments, required notice of the sale to be published "for the space of six weeks, at least once in each week, before the time appointed for sale." The notice was published six times, once in each week, before the sale, but the first insertion was less than six weeks before the sale. Mr. Justice Reed, following *Parsons v. Lanning, supra,* said this was clearly the only rational interpretation of the act. In *Pardee v. Perth Amboy, 28 Vr. 106, 108 (Supreme Court, 1894),* these cases were relied on, and the same rule of construction was applied to a similar state of facts. The publication here required was "for at least two weeks before the time for considering the assessment." The first publication was made within the period of two weeks. The publication was held to be invalid. In *Tappan v. Dayton, 6 Dick. Ch. Rep. 260, 265 (McGill, Ordinary, 1893),* the first advertisement covered the beginning of the period, but the last advertisement was made more than a week next preceding the sale, and the notice was held invalid. There can be no doubt, I think, that if I am right in considering the statutory clause now in question as providing (1) for the continuous payments of dividends, and (2) the period for which such payments shall be made, the dividends have not been continuously paid "for the period of a year next preceding the meeting." Nor do I understand the defendants' counsel to dispute this conclusion, if this is the proper view of the intention of the statute. Their claim is that the dividends themselves, and not the continuous payment of the dividends, were to be "for the period of the year preceding the meeting," and that these four dividends were

Hodge *v.* United States Steel Corporation.

the dividends for the entire year previous and not for any shorter period. This construction gives to the word "dividends" an application and meaning which is appropriate only to the distinct and different word "earnings." "Earnings" for the period of a year before the meeting may be said to accrue from the beginning of the year, but "dividends" have no existence under the by-laws until and as they are declared out of the earnings, and therefore dividends cannot be said to accrue at the beginning of the year. Had the intention of the legislature been to give this meaning to the word, the clause would have read: "Have continuously declared and paid dividends out of the earnings for a period of a year," &c. Considered from another point of view, and stated with reference to the grammatical construction of the sentence, the defendants' claim is that the words "for the period," &c., qualify or describe the "dividends" and not "the payment of the dividends." One familiar test of the proper grammatical construction of the clause can be applied by transposing the constituent parts of the sentence. It will then read as follows: "Every corporation * * * that for the period of at least one year before the meeting shall have continuously declared and paid dividends." Thus transposed the meaning of the clause is precisely the same as the meaning of the two clauses in their present position. But without the addition of words to the statute, it is impossible, on any transposition of the clauses, to convey the idea now contended for the defendant, that the clause related to the dividends. The sentence would read: "Every corporation that, *out of the earnings* of the period of at least a year before the meeting shall have continuously declared and paid dividends," &c. The test of transposition of clauses is altogether appropriate in this case, because the part of the sentence containing the word "dividends" is, in form, separated grammatically from the part of the sentence containing the words "for the period," &c., by the use of the comma. The sentence reads: "Every corporation * * * that shall have continuously declared and paid dividends at such rate, on such preferred stock for the period of at least one year next preceding the meeting." So, too, tried by the test that every word in the statute must be

made effective, the words "for the period" must be applied to the *payment* of the dividends, and cannot be applied to the dividends. If so applied, the word "continuously" has no meaning or application, and in order to have any meaning or application at all, the words "continuously declared and paid dividends" must be followed by words limiting or fixing the time for the *continuous* declaration and payment. This is effected in the statute by requiring that the continuous declaration and payment shall be "for the period of at least a year before the meeting." In fact, the entire clause, if constructed according to the rules of grammar, would have prefixed the word "continuously" to the time limited, and would have read: "Every corporation * * * that shall have declared and paid dividends at such rate continuously for the period of at least one year," &c. Finally, if I apply the test of construction that takes into account the nature and object of the statute in designating these requirements, the same meaning prevails. As is stated in the opinion of Mr. Justice Van Syckel, the purpose of the statute was to authorize redemption of stock out of bonds, and the general object of these requirements was to fix conditions which had some plain and natural relation to the solvency or financial condition of the company intending to convert stock into bonds. One of these tests manifestly was the payment of dividends. It is equally manifest that another was the length of time during which the dividends had been continuously paid. These tests are plain, simple, easily applied, and the existence of the conditions easily ascertained and demonstrated. When these payments and periods are fixed, the solvency or financial condition of the company, so far as it could be gauged by the continuous declaration and payment of dividends, is clearly and easily determined. But if the requirement of the statute is that the dividends themselves (and not the declaration and payment of them) are to be the dividends "for the period of at least a year," then, as dividends can only be declared out of the earnings, an inquiry must or may be instituted to determine whether the dividends, if declared within a year from the time of the meeting, were declared for or out of the earnings for a period of the year before the meeting, and not for a less period

than a year.    Certainly no such intent can be presumed when
we consider the object of the act.    Again, if only the dividends
and not the payment of them for the period of a year preceding
the meeting are intended by the statute, then a company whose
dividends are payable annually would, on a single payment
(made, it might be, on the day before the meeting), come within
*the reason* of the statute, and if the only requirement intended
by the statute was that the dividend at the required rate should
be paid for (*i. e.*, on account of the earnings of) the period of
a year preceding, there is no reason why such company should
be excluded.    But the payment of dividends required by the
statute is a *continuous* payment, and this word cannot be re-
jected.    As to companies paying annual dividends, there must
therefore be at least two payments of dividends *regularly* in
order to be *continuous* payments, and a single payment, al-
though made for (on account of) the period of the year preced-
ing the meeting, cannot bring them within the statute.    Unless
a company paying dividends for a year annually (otherwise
within the act) is entitled to the same privilege of converting
stock into bonds as companies paying dividends semi-annually
or quarterly, would not the act be clearly special legislation and
invalid?    The court of errors and appeals has decided that the
act is not special, but applies to all corporations, and that all
corporations may bring themselves within the requirements.    The
construction of the act in the matter now in question must there-
fore be such as not to exclude from its benefits any corporation
which is within the reason as well as the letter of the statute.
Such construction applying equally to all corporations, what-
ever the interval of payment of dividends may be, under their
charter or by-laws, is reached by declaring that irrespective of
the period on account of which they are declared and paid the
payments themselves must be made for the period of at least a
year previous to the meeting, and the payment must be continu-
ous.    Under this construction a company paying dividends an-
nually must make at least two regular and annual payments
before the meeting.    One paying semi-annually must make at
least three payments before the meeting, and one paying quar-
terly must make at least five quarterly payments.    In this way,

and in no other, so far as I can see, can every word of this provision of the statute as to the continuous declaration and payment of dividends, for the period of a year before the meeting, be given force and effect, and if this meaning is given, all corporations paying dividends regularly on their preferred stock come equally within the law and receive equally the benefit of the law, and cannot be excluded, as they may be by any other construction.

Taking, therefore, the natural meaning of the words, the grammatical construction of the whole clause, the effective meaning of every word in the clause, and the object of the clause, I reach the conclusion that the words "for the period of at least one year" apply to and qualify the "continuous declaration and payment of dividends," required by the statute, and are not to be treated as descriptive of and indicating the source or origin of the dividends themselves, or the time during which the earnings out of which the dividends declared and paid during the year have been accumulated or earned. This conclusion harmonizes with the decisions above referred to, in which the same construction was given to provisions in other statutes, requiring the performance of continuous acts for a fixed period, and which are binding upon me, as establishing a settled rule of statutory construction that controls this case. With this view of the meaning of the statute, I conclude that the meeting of the stockholders was prematurely called, and that the retirement of stock under the resolution passed at that meeting must be enjoined. This conclusion renders any expression of opinion, in reference to the other objections to the resolutions or the contract, unnecessary, and, according to my present views, such opinion on my part would be altogether *obiter*. There is, however, one matter which should be mentioned, as it has not been referred to by counsel on either side, or in the opinion of the court on appeal, and it is a matter which has or may have a material bearing in reference to carrying out a portion of the plan for conversion as it is now disclosed upon the record. It relates to the circular to the stockholders, which is part of the plan.

In my opinion in the *Berger Case* I stated that the circular to

the stockholders containing the terms and conditions of the offer to preferred stockholders of the right to subscribe for bonds to be paid for by stock had not been submitted to the court. This statement was a mistake arising from the accidental overlooking of the circular. The mistake was not discovered until after the submission of the cause on appeal, and pending the decision on appeal, I thought it proper to withhold any expression of views relating to the circular. The decision might proceed upon grounds which made the matter of the circular of no importance, and the omission would probably be called to the attention of the court by counsel if it should be thought material. I have accordingly withheld this expression, although from the time my attention was first called to the circular, it seemed to me to have an important bearing on the stockholders' rights to subscribe for the bonds. The circular was not specially referred to on the appeal, either in the opinion of the court or in the briefs of counsel, and the mistake made, in my opinion, if observed, was not considered as affecting the decision on the appeal from my order for injunction. This order for injunction was an order enjoining the execution and delivery of bonds under the bankers' contract, other than the bonds to be issued for cash. The order did not enjoin proceedings on the resolutions or the issuing of the circular, but, of course, pending the appeal, no issuance of the circular was contemplated nor has it yet been sent out. The court of errors and appeals has reversed the order enjoining the issuing of the bonds under the bankers' contract to retire the stock, and, in its opinion, the court has declared that under the resolutions the like option to purchase the bonds by stock is to be given to all stockholders, and that the same opportunity to subscribe must be given to all. The circular to stockholders is the method by which the option is given and is the paper which describes the terms and conditions of the offer. The question which occurred to me on reading the circular was whether the offer made under this circular did give to each and every stockholder a like reasonable opportunity to subscribe for and acquire the bonds.

Questions as to the reasonable manner of bringing an offer of this character to the attention of the stockholders, and as to the

Hodge v. United States Steel Corporation.

reasonable time and method to be given to them to accept the offer, are ordinarily matters to be determined, in the first instance, at least, by the board of directors of the company. The protection of the rights of all stockholders to a reasonable opportunity to receive and accept the offer is committed to the board as a part of their duty to the stockholders, and this duty was still incumbent on them after the approval of the contract, because the contract does not provide for these details. A part of this duty to the stockholders still resting on the board of directors, after the approval of the contract, is also to see that the offer to the stockholders is substantially the offer contemplated by the resolutions and contract, which have been approved by the stockholders. If the directors cause an offer to be made to the stockholders which in any substantial respects alters the terms of the offer as directed by the resolutions and contract, to the injury of the stockholders, and deprives or may deprive them, or any of them, of the opportunity to subscribe for and receive the bonds, the question arises whether the issuance of the bonds under such terms should not be enjoined. Such substantial question arises, as it seems to me, in the present case, and as it was not referred to by counsel, I now bring it to their attention on the first opportunity. The resolutions provided, among other things, that to the extent that holders thereof consented thereto, two million shares of the preferred stock should be redeemed and retired out of bonds, or the proceeds of bonds, and

"that a *reasonable opportunity* shall be offered by public advertisement to the preferred stockholders of record, upon a date to be fixed and stated in such offer, approximately to the extent of forty per cent. of their several holdings, to *subscribe for and to take at par* two million of such bonds, and to make payment therefor in preferred stock at par," &c.

The resolutions also approved the contract with J. P. Morgan & Company (the bankers' contract), and in reference to the character of the offer, this contract provided that on behalf of the company,

"the bankers by public advertisement will offer to every preferred stockholder of record on a date to be stated and fixed in the offer, for and during a period of at least thirty days after a date or dates to be

Hodge *v.* United States Steel Corporation.

stated in such offer, the preferential opportunity to subscribe for and to take the bonds and to pay the subscription in stock, not to exceed forty per cent. of their several holdings, *except at the discretion of the bankers.*"

There was no provision either in the resolutions or the contract authorizing either the directors or the bankers to withdraw or cancel either wholly or as to any stockholder the offer after it had been accepted by the stockholders. The circular to the stockholders issued by the bankers (Exhibit 6) was issued for account and on behalf of the United States Steel Corporation, and under the provisions of the bankers' contract with the corporation,

"and offers to every holder of preferred stock of the corporation of record, at the close of business upon the 1st day of July, 1902, for and during the period of thirty days from and after such date (1) the preferential opportunity to subscribe for and take bonds of the corporation, as the stockholders may severally and respectively desire, not exceeding in any instance forty per cent. of the respective holdings (except at the discretion of the bankers)."

The subscription will not be received, except upon delivery to the bankers and deposit with them of certificates *duly endorsed for transfer* for the par amount of the stockholders' subscription payable in stock. The offer contains this further clause:

"At any time prior to the delivery of all the bonds hereunder, the undersigned [the bankers], in their discretion, in whole or in part, may withdraw and cancel the offer herein made, as to any or all of the undelivered bonds."

Advertisement of the notice of withdrawal in two newspapers in the city of New York is to be a sufficient withdrawal and notice of it, and upon withdrawal the deposited shares are to be returned upon surrender of the certificates issued therefor.

The answer in this case says (end of paragraph 12):

"that after the stockholders' meeting of May 19th, 1902, the board of directors of the defendant corporation approved a circular to the preferred stockholders, of which a copy is annexed as Exhibit No. 6, but that the same has not been as yet sent to the stockholders."

Under the terms of this circular the following questions seem to arise as to the effect of the provision authorizing the bankers to withdraw or cancel the offer made on behalf of the company as to all or any of the bonds not delivered:

*First.* Whether the option to withdraw the offer as to all of the bonds does not give to the agents of the company appointed to make the offer of the bonds on its behalf, and to these agents alone, the right to cancel, in their discretion, the proceedings directed by the resolutions and contract for the retirement of the stock, and whether such power can, under the resolutions and contract, be committed to the agents who make the offer.

*Second.* Whether the provision giving the bankers the option to reject the offer as to any of the undelivered bonds, taken in connection with the right expressly given by the contract to the bankers themselves or anyone, with their consent, to subscribe for more than forty per cent. of their holdings, does not give to the bankers and their appointees a preference in the purchase. In other words, if a stockholder deposits his stock on these terms and accepts an offer, with this option to the bankers contained in it, do not the bankers, under the provision of the contract and circular, if accepted, have the power to select the persons who are to have the bonds, and may they not, if the offer is to be sent in the present form, take the entire issue, or so much as they choose, for themselves and the syndicate? By the syndicate agreement (clause 18) the bankers agree to deliver to the syndicate the bonds received by them from the company or the proceeds thereof.

*Third.* If this clause in the circular has this effect as to the withdrawal of the offer, either as to all or as to any of the bonds, should not the issue of the circular in its present form, with this clause, as part of the plan, be enjoined, even if the resolutions and contract be finally held valid? I should have considered this question as to the form of the circular had I reached the conclusion that the resolutions and contract were valid, and it may be a question in the cause to be considered by the court on appeal, if an appeal be taken, and for the consideration of the defendant company and the directors, if no appeal be taken, and further proceedings for conversion under the act to be taken.

I will advise a preliminary injunction be granted restraining the issue of bonds under the resolutions, but upon the terms that if defendants desire to appeal, complainant shall consent that the cause be set down for hearing at the next term of the court of errors and appeals.