**GALLUP v. CALDWELL et al.**

No. 7439.

Circuit Court of Appeals, Third Circuit.

May 21, 1941.

Harold F. Levin, of New York City (Delson, Levin & Gordon, of New York City, and James H. Hughes and Hughes & Terry, all of Dover, Del., on the brief), for appellant.

Caleb S. Layton, of Wilmington, Del. (Robert H. Richards and Richards, Layton & Finger, all of Wilmington, Del., on the brief), for appellees Empire Gas & Fuel Co. and others.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

This action was instituted by Bella Gallup, a resident of New York, as a shareholder of the Indian Territory Illuminating Oil Company, a New Jersey corporation,

to recover for the company damages resulting from an alleged waste of its assets and earnings. Indian Oil, two parent corporations and several directors were joined as defendants. The complaint described various methods allegedly employed by the defendants to divert the assets of Indian Oil over a period of years beginning with 1930. Certain acts were alleged to have taken place in November of 1937, April of 1939, and one practice complained of was alleged to be continuing at the time the complaint was filed, August 16, 1939. It was averred that the plaintiff was a shareholder of Indian Oil at the time of the transactions complained of, but in paragraph 16(c), which complained of certain specific transactions, plaintiff stated that she did not know whether or not those transactions took place prior to the time that she became a shareholder. The corporate defendants filed motions for a more definite statement or for a bill of particulars with respect to parts of the complaint and to dismiss paragraph 16(c) as not complying with Rule 23(b) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.[1] Thereafter the plaintiff filed a motion for discovery and leave to take depositions.

Upon the hearing on these motions the defendants submitted an affidavit dated December 13, 1939, by the assistant secretary of Indian Oil that no stock of the company stood of record in the name of Bella Gallup or Bella Gallup Freedman or Bertha Freedman. Thereafter the plaintiff filed an affidavit stating that she had been the owner of 100 shares of stock in the company from April 27, 1937 "continuously to date" and in support thereof submitted photostatic copies of a confirmation slip and a letter from Ira Haupt & Co., brokers, showing the purchase for the account of Bertha Freedman of 100 shares of Indian Oil and stating that certificates therefor, registered in brokers' names, had been delivered to the purchaser. Photostatic copies of these certificates, which had been endorsed in blank (two on November 27, 1936, and one on May 5, 1937) were also submitted. In her affidavit plaintiff swore that the account at Ira Haupt & Co., although carried for "reasons of convenience" in the name of her daughter, Bertha Freedman, was her account and that the securities were at all times her property. Attached was a photostatic copy of an affidavit by Bertha Freedman confirming this statement.

The court below, D.C., 32 F.Supp. 711, 713, filed an opinion stating that it could not "find that plaintiff was the owner of stock of Indian Company at the time of the grievances complained of or, in fact, at any time." Plaintiff's petition for a hearing on the question of her stock ownership was denied and the court entered an order dismissing the complaint. Plaintiff thereupon appealed to this court.

The case presents several problems, not all of which were raised at the argument, and some of which appear to us in a different fashion than they apparently did to counsel for either side, or the court below. To their consideration we pass.

### Speaking Motion.

■ First. We are met at the outset by the question whether it was proper for the court below to make a preliminary investigation, which carried it outside of the pleadings, as to the plaintiff's stock ownership. It is to be noted that the question involved is not one going to the jurisdiction of the court. Venner v. Great Northern Ry., 1908, 209 U.S. 24, 28 S.Ct. 328, 52 L.Ed. 666; compare McNutt v. General Motors Acceptance Corp., 1936, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; KVOS, Inc. v. Associated Press, 1936, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183; Central Mexico Light & Power Co. v. Munch, 2 Cir., 1940, 116 F.2d 85. The problem which, restated, is whether the Federal Rules of Civil Procedure countenance a

[1] "Secondary Action by Shareholders. In an action brought to enforce a secondary right on the part of one or more shareholders in an association, incorporated or unincorporated, because the association refuses to enforce rights which may properly be asserted by it, the complaint shall be verified by oath and shall aver (1) that the plaintiff was a shareholder at the time of the transaction of which he complains or that his share thereafter devolved on him by operation of law and (2) that the action is not a collusive one to confer on a court of the United States jurisdiction of any action of which it would not otherwise have jurisdiction. The complaint shall also set forth with particularity the efforts of the plaintiff to secure from the managing directors or trustees and, if necessary, from the shareholders such action as he desires, and the reasons for his failure to obtain such action or the reasons for not making such effort."

"speaking" motion to dismiss, has been much discussed since the adoption of the Rules. Each side of the question has drawn to it distinguished proponents. Their arguments and reasons are collected in a note in 9 Geo.Wash.L.Rev. 174 (Dec. 1940). We think that such procedure should be permitted especially in the kind of situation here presented. See 1 Moore's Federal Practice 645. Despite plaintiff's allegation of stock ownership it is clear that she was not a stockholder whose ownership was registered on the books of the corporation at the time suit was instituted. If record ownership is a prerequisite to the right to bring this action, then it is expedient that the point be decided preliminarily. The alternative would be to sanction discovery and perhaps other pre-trial proceedings likely to be exceedingly burdensome upon both parties only to have the case ultimately dismissed at the trial because of the plaintiff's inability to prove a fundamental but initial point. This would not only be a needless waste of the court's time but it would run counter to the mandate of Rule 1 that the Rules "be construed to secure the just, speedy, and inexpensive determination of every action."

In so holding, we do not indicate that disputed questions of fact involved in the merits of claim or defense may necessarily be fought out as preliminary issues raised upon motions. The affidavits filed by the parties here raised no fact controversy, but a question of law. No problem arising out of a possible claim to jury trial is involved. The question of law thus raised is the next point for consideration.

■ Second. Does the applicable law require that the plaintiff be a stockholder of record? It is established that this plaintiff was not a registered shareholder, at the time the action was begun. The question is not merely a procedural one, such as whether an action may be maintained by the real party in interest who is not the owner of a legal title (Goodrich, Conflict of Laws, 2d Ed. 1938, 191), but the substantive one whether one who is not a shareholder of record may assert shareholder's rights either on behalf of or against the corporation. That is a question of the law of New Jersey, the state under the law of which this company was incorporated. Section 182 of the Restatement of Conflict of Laws provides that "Whether a person is a shareholder or other member of a corpora-

tion is determined by the law of the state of incorporation".

Preliminarily we must determine whether that law is known to us.

### Judicial Notice.

■ Third. The rule is well established that federal courts in exercising original jurisdiction take judicial notice of the law of every state. Thus in Owings v. Hull, 9 Pet. 607, 624, 625, 9 L.Ed. 246 Justice Story said: "The circuit courts of the United States are created by congress, not for the purpose of administering the local law of a single state alone, but to administer the laws of all the states in the Union, in cases to which they respectively apply. The judicial power conferred on the general government, by the constitution, extends to many cases arising under the laws of the different states. And this court is called upon, in the exercise of its appellate jurisdiction, constantly to take notice of and administer the jurisprudence of all the states. That jurisprudence is, then, in no just sense, a foreign jurisprudence, to be proved in the courts of the United States, by the ordinary modes of proof by which the laws of a foreign country are to be established; but it is to be judicially taken notice of, in the same manner as the laws of the United States are taken notice of by these courts."

The point was stated concisely in Lamar v. Micou, 114 U.S. 218, 223, 5 S.Ct. 857, 859, 29 L.Ed. 94 as follows: "The law of any state of the Union, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are bound to take judicial notice, without plea or proof."

And in Hanley v. Donoghue, 116 U.S. 1, 6, 6 S.Ct. 242, 245, 29 L.Ed. 535 the court said:

"When exercising an original jurisdiction under the consitution and laws of the United States, this court, as well as every other court of the National Government, doubtless takes notice, without proof, of the laws of each of the United States.

\* \* \* \* \* \*

"In the exercise of its general appellate jurisdiction from a lower court of the United States, this court takes judicial notice of the laws of every state of the Union, because those laws are known to the court below as laws alone, needing no averment or proof."

The rule stated in these decisions has been expressed many times by text-writers; Wigmore on Evidence, 3d Ed., § 2573; 3 Beale, The Conflict of Laws § 624.1; Goodrich on Conflict of Laws, 2d Ed. 1938, § 80; 1 Greenleaf on Evidence, Lewis' Ed. 1899, § 6; 1 Chamberlayne, The Modern Law of Evidence (1911) § 585.

■ We are not here concerned with the rule that on appeal to the United States Supreme Court from a state court, the Supreme Court knows as law only what was so known to the state court. Adam v. Saenger, 1938, 303 U.S. 59, 58 S.Ct. 454, 82 L.Ed. 649.

■ This rule as to judicial notice is not affected by Erie R. R. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. That case dealt with the question of the application of the substantive law of a given state, not how such substantive law is brought to the attention of a federal court. Indeed it is implicit in the Tompkins decision that it did not affect the rule as to judicial notice in the federal courts since the Supreme Court remanded the case to the Circuit Court of Appeals with instructions that the law of Pennsylvania be applied, even though the Pennsylvania law was not pleaded or proved, and the case was tried in the Southern District of New York. We conclude, therefore, that in the instant litigation we take judicial notice of the law of New Jersey in so far as it is applicable to the rights of the parties in this case.

### The Law of New Jersey.

■ Fourth. Since New Jersey law applies and since this court takes judicial notice of the law of New Jersey, the next question is, What is the law of New Jersey on the point involved? This question is more easily asked than answered, for we find some apparent contradictions in the New Jersey decisions. In Mateer v. New Jersey Telephone Co., 1927, 135 A. 663 a per curiam decision by the Supreme Court said that the complainant must show by legal evidence that he is a stockholder and that means that his status must appear on the books of the company. Apparently to the same effect is the language in Hodge v. United States Steel Corp., 1902, 64 N.J.Eq. 90, 53 A. 601, affirmed, 1903, 64 N.J.Eq. 807, 54 A. 1, 60 L.R.A. 742. But subsequent to the Hodge decision the problem was discussed in characteristically able fashion by Vice-Chancellor Pitney. He limited and distinguished the Hodge case and concluded that he was unable to perceive "why a clear title to the shares of stock, with the immediate right to have the stock transferred on the books of the company, does not give the owner a right to the ear of this court to protect his interest in the corporation and its management." O'Connor v. International Silver Co., 1904, 68 N.J.Eq. 67, 59 A. 321, 324. The adjudication was affirmed by the Court of Errors and Appeals, 1905, 68 N.J.Eq. 680, 62 A. 408 for the reasons given by the Vice-Chancellor. The Mateer case may be distinguished on the basis that it was an action for a writ of mandamus. See the report of subsequent proceedings in Mateer v. New Jersey Telephone Co., 1927, 136 A. 317, 5 N.J. Misc. 261. The instant case involves an action which, under former practice, would have been brought on the equity side of the court. We conclude that under the law of New Jersey an equitable owner may bring an action such as this.[2] Plaintiff's allegation that she was the owner of 100 shares of stock of Indian Oil plus the papers submitted by her were sufficient to establish her right to maintain this action as against the affidavit submitted by the defendants, which proved only that she was not a shareholder of record.

■ Fifth. This brings us to the last and perhaps the most difficult point in the case. Of what acts may the shareholder complain? Is she limited to those which have occurred since she became a shareholder or may her action reach those which took place before that time? At the argument the court was presented with a conflict between Delaware decisions which, it was said, adopted the latter view and the provisions of Rule 23(b) of the Federal Rules of Civil Procedure which require an averment "that the plaintiff was a shareholder at the time of the transaction of which he complains * * *." This par-

---

[2] See, also, to the same effect: Price v. Union Land Co., 8 Cir., 1911, 187 F. 886; Backus v. Finkelstein, D.C.Minn. 1924, 23 F.2d 531; Starrett Corp. v. Fifth Ave. & Twenty-Ninth St. Corp., D.C.S.D.N.Y.1932, 1 F.Supp. 868; Willcox v. Harriman Securities Corporation, D.C.S.D.N.Y.1933, 10 F.Supp. 532; Richardson v. Blue Grass Mining Co., D. C.E.D.Ky.1939, 29 F.Supp. 658, 665; see, also, Arcola Sugar Mills Co. v. Burnham, 5 Cir., 1933, 67 F.2d 981, 982.

ticular problem the court is not compelled to meet because we think that the plaintiff's rights here are not determined by the law of Delaware, where the action was brought in the federal District Court, but by the law of New Jersey, the state of incorporation. "The right of a shareholder to object to conduct occurring in the operation of the corporate enterprise is determined by the law of the state of incorporation. This includes acts that are beyond the purposes of the corporation, acts which are prohibited either by the state of incorporation or by the state where the acts are to be performed and acts which are alleged to be beyond the authority of the officers or directors." Restatement, Conflict of Laws § 183, comment b.

It is when we come to examine the law of New Jersey that the difficulty arises. In Pollitz v. Gould, 1911, 202 N.Y. 11, 94 N.E. 1088, 38 L.R.A.,N.S., 988, Ann.Cas. 1912D, 1098, the court cited Appelton v. American Malting Co., 1903, 65 N.J.Eq. 375, 54 A. 454 as committing New Jersey to the rule that a stockholder may complain of transactions occurring prior to his acquisition of the stock. We do not so read the Appelton case. In 13 Fletcher, Cyclopedia of the Law of Private Corporations § 5980, New Jersey is listed as a jurisdiction where "a stockholder may sue, although he purchased his shares after the transaction complained of". But the cases cited do not sustain this conclusion. In Elkins v. Camden & Atlantic R. R., 1882, 36 N.J.Eq. 5 the appeal was to enjoin acts proposed to be taken by the corporation and although the shareholder purchased his stock after negotiations had commenced he was not complaining of any past actions. In Hodge v. United States Steel Corp., 1902, 64 N.J. Eq. 111, 53 A. 553 and in General Inv. Co. v. Bethlehem Steel Corp., 1917, 87 N.J.Eq.

234, 100 A. 347 the actions were not representative suits, but were actions brought by the shareholders to protect their own rights as shareholders. Indeed in the Hodge case the opinion particularly recognized that the question might be different if the suit were purely a representative one. Compare with the last two cases Hodge v. United States Steel Corp., 1902, 64 N.J. Eq. 90, 53 A. 601 and Trimble v. American Sugar Refining Company, 1901, 61 N.J.Eq. 340, 48 A. 912.

The conclusion is that the point is not a settled one under the law of New Jersey. Under such circumstances the proper course seems to be to follow the rule laid down in Rule 23(b). The discussion of this Rule in Moore's Federal Practice indicates some considerable basis for argument that the rule is substantive in character. If it is, Moore states, "It is subject to challenge in the Federal Courts in those states which have no such requirement * * *." Moore's Federal Practice, p. 2250 et seq. On this interesting point we express no opinion one way or the other. Until the state law is found to be in conflict it seems clearly the duty of a lower federal court to follow the rules which the Supreme Court has promulgated for its guidance.[3]

We conclude, therefore, that the plaintiff may complain only of acts occurring subsequent to her becoming the owner of shares in the defendant company.

The order of the District Court is reversed and the case is remanded, with directions that it be reinstated for further proceedings, not inconsistent with this opinion.

JONES, Circuit Judge, concurs in the result.

---

[3] In the article by Judge Charles E. Clark (who is Reporter for the Committee which drafted the Rules), "The Tompkins case and the Federal Rules", Journal of the American Judicature Society, February, 1941, the author says: "From the nature of the federal rules and the manner of their adoption as a result of long study and careful consideration, a strong presumption should be indulged in that matters included in them as procedural are to be so held by the courts." One need not even go that far in order to uphold the result reached in the instant case.