## WILLCOX et al. v. HARRIMAN SECURITIES CORPORATION et al.

District Court, S. D. New York.
Dec. 8, 1933.

Sheppard, Jones & Seipp, of New York City (Henry G. Seipp and Henry F. Herbermann, both of New York City, of counsel), for plaintiffs.

Gresser, Starr & Walker, of New York City, for defendant Harriman Securities Corporation.

Rushmore, Bisbee & Stern, of New York City, for defendants Harriman National Bank & Trust Co. of City of New York and Henry E. Cooper as conservator of Harriman National Bank & Trust Co. of City of New York.

Cardozo & Nathan, of New York City, for defendants John E. Noble, Evan W. Hughes, Frederick E. Goldman, and Liberty National Bank & Trust Company in New York.

PATTERSON, District Judge.

This is one of numerous suits arising out of the failure of the Harriman National Bank & Trust Company. The suit is in this court because the conservator of a national bank is one of the defendants. The present motions are by the defendants to dismiss the bill for defects said to be apparent on its face.

The suit is in equity, brought by three former stockholders of the Liberty National Bank & Trust Company against Harriman Securities Corporation, Harriman National Bank & Trust Company and its conservator, four individual defendants, and Liberty National Bank & Trust Company. In the first part of the bill the plaintiffs aver that they formerly owned stock in the Liberty Bank; that an agreement was made between certain other stockholders of the Liberty Bank and the Harriman Company whereby stock in the Liberty Bank was to be exchanged for stock in the Harriman Bank; that the Harriman Company and the Harriman Bank at the time maintained a fictitious and artificial market in Harriman

Bank stock at prices in excess of its true value, for the purpose of misleading the plaintiffs and others into believing that the artificial market quotations represented the real value of the stock; that the plaintiffs were led by such fraudulent conduct to become parties to the agreement and to exchange their Liberty Bank stock for Harriman Bank stock; that thereafter 69,000 out of a total of 90,000 shares of Liberty Bank stock were exchanged for Harriman Bank stock; and the plaintiffs offer to surrender their Harriman Bank stock as a condition of the rescission of the exchange. In the second part of the bill it is alleged that the Harriman Bank then made an agreement with the Liberty Bank under which the former assumed the liabilities of the latter, took possession of its assets, and agreed to transfer back to the Liberty Bank any surplus remaining after payment of the liabilities; that the Liberty Bank was placed in liquidation and a liquidating committee appointed by the stockholders, all of the members of the committee being officers or employees of the Harriman Bank and being also the individual defendants in the suit; that these defendants entered into a conspiracy to deliver the surplus assets to the Harriman Company and made an agreement to that effect, in violation of their duties to the stockholders of the Liberty Bank; and that the Harriman Bank thereafter received such assets, charged with a trust in favor of the Liberty Bank and its stockholders. It is further alleged that the plaintiffs do not know who the directors of the Liberty Bank are, if there are any, and hence have been unable to make any demand on them for a suit by the Liberty Bank; and that any demand made on the liquidating committee would be futile. The relief sought includes a rescission of the exchange of stock, so that the plaintiffs will receive back their Liberty Bank stock; a receivership for the Liberty Bank, in place of the liquidating committee; an accounting by the Harriman Company, Harriman Bank, and the individual defendants; and the impressing of a trust on all the surplus assets of the Liberty Bank in the hands of these defendants.

One further feature of the bill will be noted. It is styled as brought by the plaintiffs in their own behalf and in behalf of all other parties to a certain deposit agreement. It is stated that the subject-matter of the suit is of common interest to all Liberty stockholders who exchanged their stock for Harriman Bank stock and who have deposited or may hereafter deposit their stock under the deposit agreement with the plaintiffs as a committee, and that such stockholders are very numerous. The deposit agreement itself is not pleaded.

The motions to dismiss the bill are on the grounds that no cause of action is set forth, and alternatively that there is an improper joinder of causes of action in one suit. Before discussing these points, however, I deem it appropriate to analyze the bill and determine the status of the plaintiffs.

On the face of the bill the plaintiffs have stated or attempted to state two grievances. The first is that they were induced to part with their Liberty stock by conduct of the Harriman Company characterized as fraudulent, and because of this they ask for a rescission of the exchange and restoration of their former status. The second is that the assets of the Liberty Bank were wrongfully interfered with by the defendants, and because of this they demand that redress be given to the Liberty Bank. The two matters are bound together, however, in the sense that the first is a necessary preliminary to the second. Should the plaintiffs fail on the first, they fail altogether.

As to the exchange of stock the plaintiffs' rights are personal to them alone. They cannot maintain a suit in behalf of others said to have been similarly defrauded. In such a case there may be enough similarity in the issues to warrant several plaintiffs joining in one suit for rescission (see Akely v. Kinnicutt, 238 N. Y. 466, 144 N. E. 682), but the maintenance of a class suit is quite a different thing. The issues are not identical, and even if they were there is no common subject-matter. Each defrauded person is interested in his own stock, not in that of any other victim. On the authorities it is settled that a representative suit by one of numerous defrauded persons in behalf of himself and others will not lie. Hallows v. Fernie, 3 Ch. App. 467, 471; Clarkson v. Davies, [1923] App. Cas. 100, 112; Churchill v. Whetnall, L. J. R. 1913, 87 Ch. Div. 524; Associated Almond Growers v. Wymond (C. C. A.) 42 F.(2d) 1; Brown v. Werblin, 138 Misc. 29, 244 N. Y. S. 209. See also Baker v. Portland, Fed. Cas. No. 777, 5 Sawy. 566; Bickfords, Inc. v. Federal Reserve Bank, 5 F. Supp. 875, decided by this court November 23, 1933. The plaintiffs therefore cannot obtain rescission for all who exchanged their stock;

nor can they obtain it for that more restricted class of former stockholders who happen to deposit certificates or other papers with them. The rights or status of such persons cannot be tried out in this suit unless they become parties to it in the regular way. The allegations as to the formation of a committee and as to the deposit of stock with the committee therefore add nothing to the bill, although I cannot see that the presence of these averments does any harm. The plaintiffs' suit, in so far as it seeks a rescission or a recognition of them as Liberty stockholders, must be viewed as a suit maintained by them in their individual capacities and on their own behalf alone.

The other part of the bill, setting forth a cause of action in favor of the Liberty Bank against the defendants, is plainly an effort by the plaintiffs to show a derivative suit. No damage was done directly to them by the dealings which the defendants are alleged to have had with the Liberty Bank, and as to these things they have no personal grievance. Their only standing is their alleged interest in the Liberty Bank, an interest which they claim is analogous to that of stockholders.

■■■ 1. *The motion based on insufficiency of a cause of action.*—There can be no question that a cause of action against the Harriman Company for rescission of the exchange of stock is set forth. If persons boost the quoted price of a stock above its real value by fictitious sales in order to induce the public to take over their stock at the artificial levels, one who acquires stock for value from the manipulators may treat the transaction as one infected by fraud and may rescind. The fact that information as to the sales at artificial figures comes to the victims by reports or quotations published in the newspapers rather than by direct communications from the manipulators does not break the chain of causation. That is the very medium of information contemplated and intended by the operators of the plan. Further discussion of this phase of the case is unnecessary, in view of the recent opinion of Judge Woolsey in United States v. Brown (D. C.) 5 F. Supp. 81, decided November 23, 1933, with which I am in agreement. See, also, Miller v. Barber, 66 N. Y. 558; Scott v. Brown, [1892] 2 Q. B. 724; "Liability for Stock Market Manipulation," by A. A. Berle, 31 Columbia Law Review, 264, at pages 270, 271.

■■ The sufficiency of the bill against the defendants other than the Harriman Company is not so plain. The only claim asserted against them is a claim of the Liberty Bank which the plaintiffs seek to avail themselves of along the lines of a "stockholders' suit." The bill in such a suit must ordinarily cover two things: First, a cause of action in favor of the corporation; and, second, the facts entitling the plaintiff to sue in place of the corporation, that he is a stockholder, and that the corporation has refused or unreasonably failed to bring the suit. Kavanaugh v. Commonwealth Trust Co., 181 N. Y. 121, 124, 73 N. E. 562. (In the federal courts the bill must show compliance with rule 27 of the Equity Rules [28 USCA following section 723], but the defendants make no contention that the bill is inadequate on this feature.) Here the plaintiffs confess that they are not stockholders in the legal sense of the word. The question is whether they have shown enough to permit them to sue in the corporation's right.

■■ Some have gone so far as to say that only a stockholder of record on the corporate books can maintain such a suit. Hodge v. United States Steel Corporation, 64 N. J. Eq. 90, 53 A. 601; Aalwyn's Law Institute v. Martin, 173 Cal. 21, 159 P. 158; Brown v. Duluth R. Co. (C. C.) 53 F. 889. This view is against the weight of authority and seems on principle to be far too strict, the holder of indorsed certificates having legal title to shares represented by the certificates and therefore being entitled to bring a suit of this type. Bagshaw v. Eastern Union R. Co., 7 Hare 114; O'Connor v. International Silver Co., 68 N. J. Eq. 67, 59 A. 321; Ervin v. Oregon R. Co., 62 How. Prac. (N. Y.) 490; Thompson on Corporations, § 4637 (3d Ed.). It has been held that the equitable owner of shares, such as the beneficiary of a trust, has capacity to bring the suit. Great Western R. Co. v. Rushout, 5 DeG. & Sm. 290; Baum v. Sporborg, 146 App. Div. 537, 131 N. Y. S. 267. It is true that such a plaintiff is twice removed from the cause of action; he must trace his right through the trustee as well as the corporation. Nevertheless the rule is a sound one and is doubtless necessary to right a wrong in cases where both the corporation and the trustee decline to sue.

■■■ In the present case the plaintiffs are equitable owners of Liberty stock if the facts stated in the bill can be established as

true. They show that they formerly held shares of stock but were induced by fraud to transfer the legal title to another. The case is one where a court of equity will impress a constructive trust on the shares in the hands of the fraudulent transferee and order a transfer back to the original owner, who is deemed to have held the equitable title all along. Perry on Trusts, § 171; Pomeroy on Equity, § 1053; Moore v. Crawford, 130 U. S. 122, 128, 9 S. Ct. 447, 32 L. Ed. 878; Hammond v. Pennock, 61 N. Y. 145, 156. I am satisfied that such an equitable interest in shares of stock suffices to permit the institution of a "stockholders' suit." Support for this view is found in Empire Realty Co. v. Harton, 176 Ala. 99, 104, 57 So. 763. It was held that a plaintiff who had once held stock did not lose his rights by a transfer brought about by fraud of the transferee and might bring a suit in behalf of the corporation. The bill was dismissed, however, on the ground that no facts constituting fraud in the loss of the stock were pleaded and also on the ground of multifariousness. The same point was discussed but left open in Thompson v. Stanley, 73 Hun, 248, 25 N. Y. S. 890.

A stricter view was taken in Barnett v. Ground, 304 Mo. 593, 263 S. W. 836, where the facts pleaded were like those averred in this bill. It was held that the plaintiff must establish his status as a stockholder before bringing suit as a stockholder. This means that the plaintiff must bring successive suits and would entail such delay as would in many cases amount to a denial of relief altogether.

For the reasons referred to above, I am of opinion that the bill sets forth a cause of action as to all defendants.

■ 2. *The motion based on misjoinder.*— The bill embraces a right individual to the plaintiffs and a right derivative in character. There are cases holding that a bill of this sort is objectionable for misjoinder of causes of action. Inman v. New York Interurban Water Co. (C. C.) 131 F. 997; Brock v. Poor, 216 N. Y. 387, 111 N. E. 229; Groh v. Flammer, 100 App. Div. 305, 91 N. Y. S. 423; Empire Realty Co. v. Harton, supra; Barnett v. Ground, supra. The Inman Case was decided prior to the adoption of rule 26 of the present Equity Rules (28 USCA following section 723), and the decisions in state courts were in conformity to statutes or practice less liberal than that rule.

Rule 26 provides that causes of action may be united in one bill "in order to promote the convenient administration of justice." I am of opinion that justice will be served by allowing the joinder. The cause of action for rescission is not disconnected from the derivative cause of action. It is a necessary preliminary to any relief, for unless the plaintiffs can establish their status as stockholders of the Liberty Bank their whole suit fails. What is the alternative? If the two matters cannot be united in one suit, the plaintiffs may presently sue only to recover their stock; for the redress of wrongs done to their corporation they would be obliged to wait until they had prevailed in the suit for rescission of the exchange of stock. By that time all chance of obtaining effective relief in behalf of the corporation might have passed. The balance of convenience is in favor of permitting the joinder.

There are authorities in support of this view. Price v. Union Land Co. (C. C. A.) 187 F. 886; Backus v. Finkelstein (D. C.) 23 F.(2d) 531; Greer Investment Co. v. Booth (C. C. A.) 62 F.(2d) 321, 324. In each of these cases the joinder of a cause of action by a former stockholder to regain stock he had parted with through fraud and of a cause of action in the derivative right of a stockholder complaining of wrongs done to his corporation was held unobjectionable. It is true that in those cases one at least of the several plaintiffs still held his original stock and could maintain the suit under the usual rule, but that fact has no bearing on the propriety of the joinder of the causes of action by those who had transferred their stock. In Greer Investment Co. v. Booth, supra, the court said in regard to the plaintiffs who had transferred their shares through fraud: "It was essential to their right to maintain the suit in behalf of the Trust that the shareholders who had transferred their preferred shares should be restored to their former status as shareholders in the Trust, and such relief was incidental to the main relief sought. The seeking of such incidental relief in a suit which had a common point of litigation, the decision of which would affect the whole subject-matter and settle the rights of all the parties thereto, would not render the bill multifarious."

It follows that the bill should not be dismissed for misjoinder of causes of action.

The defendants also moved to dismiss the bill on the ground that the plaintiffs.

have no capacity to sue. What has already been said disposes of this point. In so far as the suit is brought by them as a committee for persons depositing certificates with them, they have no standing. But in their own behalf as three individuals they may maintain the cause of action for rescission of the exchange of stock, and in their derivative right they may litigate the right of their corporation for relief against the other defendants. The motion in this respect will be denied.

Attention is directed by the defendants to other suits involving the rights of the Liberty Bank against the Harriman Bank. These matters are irrelevant, the present motions raising only points that appear on the face of the bill. It is also said that the plaintiffs in maintaining the suit are seeking to avoid liability on assessments to be made against them as stockholders of the Harriman Bank. The plaintiffs' success in the suit will not affect their liability as Harriman Bank stockholders. It is no defense to an assessment on bank stock that the stockholder has been induced to acquire the stock by fraud. Scott v. Deweese, 181 U. S. 202, 21 S. Ct. 585, 45 L. Ed. 822; Anderson v. Cronkleton (C. C. A.) 32 F. (2d) 170; Williams v. Stone (C. C. A.) 25 F.(2d) 831. But in any event the motive that may lie behind the institution of this suit is immaterial.

The motions to dismiss the bill will accordingly be denied.