Frank H. **MULLEN**, et al., **Plaintiff[s]**,

v.

**SWEETWATER DEVELOPMENT CORPORATION**, et al., **Defendant[s]**.

Civ. A. No. 85–C–1121.

United States District Court, D. Colorado.

Oct. 8, 1985.

810

Gregory R. Piche, Colorado Springs, Colo., Cassandra G. Sasso, Denver, Colo., for plaintiffs.

Robert E. Warren, Jr., J. Lawrence Hamil, Denver, Colo., Robert J. Mason, Colorado Springs, Colo., for defendants.

## ORDER

CARRIGAN, District Judge.

Plaintiffs, Rodney Preisser, James Dingeman, Jr., and Frank Mullen filed this action asserting seven claims for relief, two of which arise under the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78a *et seq.* (1982), one of which arises under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* (1982), and four of which are state common law claims. Jurisdiction over the federal claims is invoked under 15 U.S.C. § 78aa (1982), 18 U.S.C. §§ 1962 and 1964 (1982), and 28 U.S.C. § 1331 (1982). Pendent jurisdiction is asserted over the state claims.

Before me are the following motions: 1) a motion by all the defendants to dismiss or for judgment on the pleadings for lack of subject matter jurisdiction; 2) a motion by the defendants Western Consortium Inc. and Hydro Transfer Corporation for judgment on the pleadings; 3) a motion by the defendants Thomas Rhoades and the Tianna Corporation to dismiss; 4) a motion by the defendant Sandia Savings and Loan Association for judgment on the pleadings; 5) a motion by the plaintiffs for appointment of a receiver; 6) a motion by the plaintiffs for an order staying further conveyance of water rights; 7) a petition by the plaintiffs for an order to show cause; and 8) a motion by the defendant Western Consortium to disqualify one of the plaintiffs' attorneys. By this order, I resolve the first four of those motions. The remaining motions will be decided following a hearing.

I. *Motions to Dismiss or for Judgment on the Pleadings for Lack of Subject Matter Jurisdiction.*

A. *Factual Background*

The facts, viewed in a light most favorable to the plaintiffs, as I am bound to view them on these motions, are as follows. In 1981, Joe Farmer and Alexander Kane were the sole stockholders of the defendant, Sweetwater Development Corp. ("Sweetwater"). Farmer owned one-third of the shares of Sweetwater stock, and Kane owned the other two-thirds. Sweetwater held title to approximately ten water rights decrees in El Paso County, Colorado. According to the terms of the corporate charter, any shares of Sweetwater stock offered for sale were subject to a right of first refusal in favor of the corporation, and then to each of the individual shareholders.

In May, 1981, the defendant Samuel Morreale, the president of the defendant Blue Dolphin Investments, Ltd. ("Blue Dol-

phin"), began negotiations with Kane to acquire Kane's two-thirds interest in Sweetwater.

Shortly thereafter, on June 11, 1981, Farmer executed a contract with the plaintiffs. Under the terms of that contract, when Kane attempted to sell his stock interest in Sweetwater to Morreale and Blue Dolphin, Farmer would exercise his right of first refusal, obtain Kane's shares of Sweetwater stock, and then sell one hundred percent of the Sweetwater stock to the plaintiffs.

Farmer allegedly was prevented from exercising his right of first refusal by the operation of a clause in the Sweetwater stockholders' agreement that stated that a stockholder attempting to exercise a right of first refusal was required to pledge collateral at least equal in value to the collateral pledged by the party attempting to purchase the Sweetwater stock. Morreale and Blue Dolphin had pledged 350 acres of property which they represented to be worth at least $1.4 million. Because Farmer was unable to put up collateral worth $1.4 million to match the collateral value claimed by Blue Dolphin and Morreale, Farmer was not allowed to purchase Kane's Sweetwater stock.

Plaintiffs contend that the value of Blue Dolphin's security collateral was "fraudulently and grossly inflated." Complaint, para. 15. They allege that the land which Morreale and Blue Dolphin valued at $1.4 million was purchased by Morreale for $25,000 in 1978 and was appraised at $70,000 in 1982. Complaint, para. 16. Had it not been for the fraud perpetrated by Morreale and Blue Dolphin, the plaintiffs assert, Farmer would have successfully exercised his right of first refusal, acquired Kane's two-thirds interest in Sweetwater, and then sold all of the stock to the plaintiffs.

When Farmer's efforts to purchase the Sweetwater stock owned by Kane failed, he declared that his contract with the plaintiffs was void for failure of a condition precedent. Plaintiffs, in response, waived the condition that Kane's share of the stock be acquired and sought performance of the rest of the contract (for the remaining shares that Farmer owned outright). Negotiations failed to resolve the matter, and the plaintiffs filed an action in state court for specific performance, subject to a reduction in price to reflect Farmer's failure to acquire all of the Sweetwater stock. Judgment was entered in favor of the plaintiffs on August 28, 1984. The case is currently on appeal to the Colorado Court of Appeals.

Blue Dolphin appeared in the state suit for specific performance as a third-party defendant and attempted to assert the preemptive right of first refusal it had acquired by purchasing Kane's stock. The state court rejected Blue Dolphin's claim on the grounds of waiver and laches. Sweetwater did not appear as a party in the state specific performance action. Therefore, the state court did not rule on whether Sweetwater could exercise its right of first refusal.

On October 10, 1984, Farmer gave notice to Sweetwater of the pending sale of his Sweetwater stock to the plaintiffs. The next day, Sweetwater (controlled by Morreale and Blue Dolphin) attempted to exercise its right of first refusal by tendering performance. The tender was refused. In December, 1984, Sweetwater commenced an action in state court to prevent the transfer of Farmer's stock to the plaintiffs. On March 15, 1985, a preliminary injunction was granted in favor of Sweetwater. That injunction is currently on appeal to the Colorado Court of Appeals.

While the plaintiffs' specific performance action concerning Farmer's one-third interest in Sweetwater was in progress, Blue Dolphin defaulted on a payment of $140,000 due to the Kanes on June 10, 1982. Kane commenced a breach of contract action in state court. While that action was pending, the majority stockholders of Sweetwater (Morreale and Blue Dolphin), over Farmer's objections, granted the Tianna Corporation ("Tianna") an option to purchase Sweetwater's water rights for $3.3 million. The option was given in exchange

for an unsecured, non-interest bearing promissory note for $33,000 from Tianna.

On August 9, 1983, the terms of the option were modified. The selling price was increased from $3.3 million to $3.7 million, and the terms of purchase were revised. The new terms required a fifteen percent cash down payment at closing and payment of interest only for ten years on a twenty-year promissory note.

On January 5, 1985, under the direction of Morreale and Blue Dolphin, Sweetwater transferred its water rights to Western Consortium, Inc. in exchange for 3.7 million shares of Western Consortium stock. In addition, 19.3 million shares of Western Consortium stock were transferred to Tianna in exchange for its release of the option to purchase Sweetwater's water rights. Sweetwater's water rights represented 82.6 percent of Western Consortium's book value, but Sweetwater received only 13.3 percent of Western Consortium's stock. Tianna received 68.9 percent of Western Consortium's stock in exchange for its option to purchase Sweetwater's water rights. Tianna is owned by Thomas S. Rhoades, the president of Western Consortium.

On August 23, 1984, Western Consortium secured a loan from Sandia Savings and Loan Association ("Sandia") for $3 million. The loan was secured by a lien on the water rights acquired from Sweetwater and a forty-five percent profit participation by Sandia in any subsequent sale of the water rights. Plaintiffs allege that the proceeds from the loan were used to extinguish Blue Dolphin's debt to Kane. Kane's suit against Blue Dolphin was dismissed on August 31, 1984.

On January 23, 1985, Western Consortium transferred the water rights to Hydro Transfer Corporation ("Hydro"), a wholly owned subsidiary of Western Consortium. The transfer was without consideration. The same Rhoades who is the president of Western Consortium and the owner of Tianna is the president of Hydro. Plaintiffs allege that "at some time during April, 1985, Hydro further encumbered the Sweetwater water rights by entering into a Water Purchase and Delivery Contract with Frank Lynch."

On July 3, 1985, Western and Hydro filed with this court a notice of their intention to further encumber the Sweetwater water rights by using them a security for a $6.8 million loan.

B. *Standing.*

Defendants have moved for judgment on the pleadings under Fed.R.Civ.P. 12(c) asserting that the plaintiffs have no standing to file this action. The parties have treated this action as if it were simply a shareholder derivative action and have argued the issue in those terms. Review of the complaint, however, reveals that this is both a direct and a derivative action. The First Claim for Relief alleges that the defendants violated federal securities law in connection with the transfer of the Sweetwater water rights for Western Consortium stock. This is clearly a derivative action. The alleged injury from this asserted conduct clearly would be to the corporation. The Second Claim for Relief alleges that the same conduct violated state securities law. This too is a derivative claim, as is the Fourth Claim which alleges that the defendants have wrongfully converted water rights owned by Sweetwater.

The Third and Fifth Claims for Relief, however, are direct claims. The Third Claim alleges that the defendants were fiduciaries vis-a-vis the plaintiffs and that the defendants breached their fiduciary duties by manipulating Sweetwater solely for their own personal benefit. The injuries allegedly caused would fall directly on the plaintiffs, not the corporation. The Fifth Claim alleges that the defendants violated Rule 10b–5 in connection with Kane's sale of Sweetwater stock to Blue Dolphin. Plaintiffs contend in this Claim that they are entitled to exercise a right of first refusal over this transaction. This also is a direct claim, because the plaintiffs are seeking recovery of stock that allegedly belongs to them.

The Sixth Claim for Relief is actually a prayer for relief; it probably should be

stricken as a claim. On motion by any party, after I have had the opportunity to consider any objections the plaintiffs may have, I will take appropriate action. The Seventh Claim for Relief is a hybrid. In it, the plaintiffs allege violations of RICO, 18 U.S.C. § 1961 *et seq.* (1982), and seek both the restoration of the Sweetwater water rights and transfer to the plaintiffs of the majority two-thirds interest in Sweetwater.

### 1. *Direct Claims*

Plaintiffs' Fifth Claim for Relief is based on Rule 10b–5, 17 C.F.R. § 240.10b–5, which was promulgated under § 10(b) of the 1934 Act, 15 U.S.C. § 78j (1982). Rule 10b–5 states:

> "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security."

 The right to bring a private action under the 1934 Act is limited to actual purchasers and sellers of securities. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). However, the requirement that a party be a purchaser or seller must be read flexibly. *In re Penn Central Securities Litigation*, 357 F.Supp. 869 (D.Pa.1973), *aff'd* 494 F.2d 528 (3d Cir.1974); *Garner v. Pearson*, 374 F.Supp. 591 (D.Fla.1974). A purchase or sale within the meaning of the 1934 Act is not necessarily a technical purchase or sale in the common law sense. *Broad v. Rockwell International Corp.*, 614 F.2d 418 (5th Cir.1980), *reh'g granted*,

618 F.2d 396 (5th Cir.1980), *on reh'g*, 642 F.2d 929 (5th Cir.1981), *cert. denied*, 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981). Furthermore, "[t]he terms 'buy' and 'purchase' each include any contract to buy, purchase, or otherwise acquire." 15 U.S.C. § 78c(a)(13) (1982). And, "[t]he terms 'sale' and 'sell' each include any contract to sell or otherwise dispose of." 15 U.S.C. § 78c(a)(14) (1982).

Plaintiffs in this case admit that they are not record holders of shares of Sweetwater stock and do not have an unqualified contractual right to the stock. Their right to Sweetwater stock is currently being litigated, both here and in state court. Plaintiffs claim, however, that they have an equitable interest sufficient to give them standing to pursue their direct claims. Defendants, on the other hand, citing *Blue Chip Stamps* and *Birnbaum v. Newport Steel Corp*, 193 F.2d 461 (2d Cir.1952), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), argue that the plaintiffs were neither purchasers nor sellers of securities because their interest in Sweetwater stock at all times has been too contingent. These arguments can be resolved only by analyzing the "purchaser or seller" requirement as it has been explained in *Blue Chip Stamps* and *Birnbaum*.

In *Birnbaum*, the president and chairman of the board of directors of Newport Steel Corp. rejected a proposed merger with Follansbee Steel Corp., a transaction that would have been advantageous to Newport's stockholders. Instead, he arranged to sell his controlling block of shares to Follansbee at twice the market price. The Second Circuit, in an opinion by Judge Augustus N. Hand, concluded that the 1934 Act "was directed solely at that type of misrepresentation or fraudulent practice usually associated with the sale or purchase of securities rather than at fraudulent mismanagement of corporate affairs." *Birnbaum*, 193 F.2d at 464. The court therefore held that Rule 10b–5 "extended protection only to the defrauded purchaser or seller," *Id.*, and affirmed the trial court's dismissal of the action for fail-

ure to state a claim upon which relief could be granted.

In *Blue Chip Stamps,* the plaintiff was offered stock in Blue Chip Corp. under an antitrust reorganization plan mandated by the federal government. Under the plan, a select group was first offered the stock. The stock that was not purchased by this group was then sold through a public offering. Plaintiff in the case was a member of the select group but failed to purchase any Blue Chip stock, allegedly because the prospectus prepared by Blue Chip was "materially misleading in its overly pessimistic appraisal of Blue Chip's status and future prospects." 421 U.S. at 726, 95 S.Ct. at 1921. The complaint asserted that the prospectus was intentionally misleading in order to discourage the parties from buying so that the rejected stock could be sold to the public at a higher price. In its decision, the Supreme Court endorsed the *"Birnbaum* rule" and held that "the plaintiff class for purposes of a private damages action under § 10(b) and Rule 10b–5 was limited to actual purchasers and sellers of securities." *Id.* at 730, 95 S.Ct. at 1923.

The primary benefit that the court found in the *Birnbaum* rule was that it enhanced judicial certainty, "permit[ting] exclusion prior to trial of those plaintiffs who were not themselves purchasers or sellers of the stock in question." *Id.* at 742, 95 S.Ct. at 1928. The Court contemplated three classes of potential plaintiffs that would be barred by the *Birnbaum* rule. The first class would be those parties (such as the plaintiffs in *Blue Chip*) who had decided not to purchase because of "an unduly gloomy representation." *Id.* at 737, 95 S.Ct. at 1926. The second class would be those who had decided not to sell their shares "because of an unduly rosy representation." *Id.* at 737–38, 95 S.Ct. at 1926. The third class would be shareholders who had suffered loss in the value of their investment because of corporate or insider activities in connection with the purchase or sale of securities in violation of Rule 10b–5 (as occurred in *Birnbaum*). *Id.* at 738, 95 S.Ct. at 1926. While the Supreme Court recognized that the *Birnbaum* rule

might "unreasonably [prevent] some deserving plaintiffs from recovering damages which have in fact been caused by violations of Rule 10b–5," *Id.* at 738, 95 S.Ct. at 1926, the Court concluded that a rejection of the *Birnbaum* rule would be even more disadvantageous. In particular, the Court was concerned with two possible consequences of any repudiation of the *Birnbaum* rule. *First,* the Court noted that any judgment for a plaintiff who neither purchased nor sold securities would be a "largely conjectural and speculative recovery in which the number of shares involved [would] depend on the plaintiff's subjective hypothesis." *Id.* at 735, 95 S.Ct. at 1925. Such a situation would subject companies to vexatious litigation pursued only for its settlement value. *Second,* the Court worried that elimination of the *Birnbaum* rule would allow an "inexorable broadening of the class of plaintiffs who may sue in this area of law, [resulting] in more harm than good." *Id.* at 747–48, 95 S.Ct. at 1931.

The policy considerations expressed in *Blue Chip* do not apply in the present case. First, the amount of stock here in controversy is not conjectural. Plaintiffs' claims arise out of a written contract, the terms of which are not in dispute. The number of shares involved, therefore, does not depend on the plaintiffs' "subjective hypothesis." Second, a decision to classify the plaintiffs as purchasers on the basis of their contract with Farmer would not "inexorably" expand the class of plaintiffs who could bring an action under the 1934 Act. In fact, such a decision would maintain the Act's integrity. The 1934 Act specifically includes any contract to sell or purchase within the definition of the terms "sale" and "purchase." To exclude a contract to purchase stock on the ground that its enforceability is disputed would allow a party to defeat any claim asserted against it merely by challenging the validity of the contract. Furthermore, when the defendants' fraud allegedly is responsible for the contract's questionable validity, as in this case, barring the plaintiffs' claim would tend to reward fraud.

Consequently, I find and conclude that the plaintiffs, as parties to a contract for the sale of stock, the validity of which is uncertain, have standing to bring a direct action under § 10(b) of the 1934 Act, 15 U.S.C. § 78j (1982) and Rule 10b–5 when the reason for the contract's questionable validity also forms the basis for the plaintiffs' § 10(b) claim. *See International Controls Corp. v. Vesco*, 593 F.2d 166, 181, n. 18 (2d Cir.1979), *cert. denied*, 442 U.S. 941, 99 S.Ct. 2884, 61 L.Ed.2d 311 (1979) (When a complaint sufficiently pleads fraud pertaining to a contract or option to purchase shares, the plaintiffs have standing to sue under the 1934 Act.); *Brooks v. Land Drilling Co.*, 564 F.Supp. 1518 (D.Colo.1983) (A merger agreement that was rescinded before performance constituted a purchase or sale of a security within the meaning of § 10(b).); *Commerce Reporting Co. v. Puretec, Inc.*, 290 F.Supp. 715 (S.D.N.Y.1968) (A suit under § 10(b) may be founded upon an aborted agreement to buy or sell securities.); *Goodman v. H. Hentz & Co.*, 265 F.Supp. 440 (N.D.Ill. 1967) (Where the plaintiffs were actual parties to transactions that, except for the fraud of one of the defendants, would have resulted in actual purchases or sales of securities by the plaintiffs, they have standing to maintain an action under § 10(b).)

The other two direct claims in this case, the Third and Seventh Claims for Relief, present no standing issues.

2. *Derivative Claims.*

Defendants have moved to dismiss, or for judgment on the pleadings, on the derivative claims on the ground that the plaintiffs are not, and never have been, "shareholders" of Sweetwater. The shareholder status requirement derives from Fed.R.Civ.P. 23.1 which states:

"In a derivative action brought by one or more shareholders ... to enforce a right of a corporation ..., the corporation ... having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder ... at the time of the transaction of which he complains or that his share ... devolved on him by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders ..., and the reasons for his failure to obtain the action or for not making the effort."

Fed.R.Civ.P. 23.1 leaves open both the issue of who is a "shareholder" and the issue of what law controls this determination. As for the latter issue, the majority position seems to be that standing to sue on state derivative claims is determined by state substantive law, while for federal claims, federal substantive law controls. *Drachman v. Harvey*, 453 F.2d 722 (2d Cir.1972); 3B *Moore's Federal Practice*, para. 23.1.17 (1985).

With respect to the federal derivative claims, it is clear that in order to bring such a claim, a plaintiff need not always be a record shareholder during the entire pendency of the lawsuit. In *DeHaas v. Empire Petroleum Corp.*, 435 F.2d 1223 (10th Cir.1970), the court allowed an action by a plaintiff who had never owned stock in the corporation for whose benefit he brought suit but who had the absolute right to obtain the stock through an exchange. The court found this equitable ownership to be sufficient under Fed.R. Civ.P. 23.1.

Defendants rightly observe that this case is clearly distinguishable from *DeHaas*. Here, the plaintiffs have not and cannot now demonstrate that they are absolutely entitled to any shares of Sweetwater stock. Rather, they claim that through the defendants' fraud, they were prevented from obtaining the stock. Proof of their fraud claim is therefore necessary in order for them to be shareholders.

My research has revealed only one similar case. In *Willcox v. Harriman Securi-*

*ties Corp.,* 10 F.Supp. 532 (S.D.N.Y.1933), the plaintiffs were former stockholders of the Liberty National Bank & Trust Company. They alleged in their complaint that they were fraudulently induced by the defendants to exchange their Liberty Bank stock for stock in the Harriman Company. They further alleged that the defendants had wrongfully interfered with Liberty Mutual's assets and they demanded that redress be given to Liberty Mutual. In denying a motion to dismiss, the court stated:

> "The only claim asserted against [these defendants] is a claim of the Liberty Bank which the plaintiff seek to avail themselves of along the lines of a 'stockholder's suit.' The bill in such a suit must ordinarily cover two things: First, a cause of action in favor of the corporation; and, second, the facts entitling the plaintiff to sue in place of the corporation, that he is a stockholder, and that the corporation has refused or unreasonably failed to bring the suit.... Here, the plaintiffs confess that they are not stockholders in the legal sense of the word. The question is whether they have shown enough to permit them to sue in the corporation's right.

> . . . . .

> In the present case the plaintiffs are equitable owners of Liberty stock if the facts stated in the bill can be established as true. They show that they formerly held shares of stock but were induced by fraud to transfer the legal title to another.... I am satisfied that such an equitable interest in shares of stock suffices to permit the institution of a 'stockholders suit.'" *Id.* at 535–36.

■ I find and conclude for the reasons expressed in *Willcox* that despite the fact that the plaintiffs have never actually owned shares in Sweetwater, they have standing to bring their federal derivative claims. As is the case with their direct claim under § 10(b), the plaintiffs' standing is conditional upon a finding at trial that but for the defendants fraud, the plaintiffs would have become owners of Sweetwater stock. *See Land v. Dollar,* 330 U.S. 731,

67 S.Ct. 1009, 91 L.Ed. 1209 (1947) (When the issue of subject matter jurisdiction is so inextricably linked to the merits of the case that the court must determine the merits in order to decide jurisdiction, the court has jurisdiction to determine its jurisdiction by proceeding to a decision on the merits.) To rule otherwise would be to require these plaintiffs to bring two separate actions, one to establish their fraud case and one to recover for injury to the corporation. Considerations of judicial economy counsel against such a ruling.

■ With respect to the state derivative claims, there appears to be no Colorado law on the issue of who is a shareholder for purposes of bringing such claims. However, Colo.Rev.Stat. § 7–4–121 (1973) states that "no action shall be brought ... in the right of a corporation ... unless plaintiff was a holder of shares ..." at the time of the wrong. This contrasts with Colo.Rev. Stat. § 7–1–102(11) (1973) which defines a shareholder as a "holder *of record* of shares." (emphasis added). I find and conclude that the absence of the qualification "of record" from § 7–4–121 is significant, and suggests that a plaintiff in a derivative claim based on state law need not be a record owner of shares throughout the pendency of the lawsuit. I further find and conclude that in the absence of further Colorado law on the issue, the Colorado Supreme Court would follow the substantive law as it has developed in regard to federal claims under Rule 23.1. Accordingly, I find and conclude that the plaintiffs have standing to bring both their state and federal derivative claims.

Counsel should note, however, that the issue of standing may be decided in the state courts in this case. The parties should be prepared to argue the res judicata effect of any state court judgment that determines whether the plaintiffs are entitled to any Sweetwater stock.

## II. *Motion by Defendants Western Consortium, Inc. and Hydro Transfer Corp. for Judgment on the Pleadings.*

■ Defendants Western Consortium, Inc. ("Western Consortium") and Hydro

Transfer Corp. ("Hydro") have moved for judgment on the pleadings on several additional grounds. First, they argue that the plaintiffs have not sufficiently alleged that they have attempted to obtain the desired relief from the corporation before filing this action, or their reasons for failing to do so. *See* Fed.R.Civ.P. 23.1. The issue of whether proper demand has been made on the corporation is "one for the court, and its determination lies within the sound discretion of the court. Courts have generally been lenient in excusing demand." *De-Haas v. Empire Petroleum Co.*, 435 F.2d 1223, 1228 (10th Cir.1970).

■■■ In their complaint, the plaintiffs stated:

"The Plaintiffs have made no demands upon Sweetwater, its board of directors or Blue Dolphin, its controlling shareholder, to bring any action in the premises aforesaid for the reason that all of said parties, excluding the Defendant Farmer, are liable with respect to the transaction complained of herein, and any demand that should be brought on the transaction herein alleged would be useless and futile." Complaint, para. 45.

I find and conclude that the plaintiffs have sufficiently pleaded compliance with Fed.R.Civ.P. 23.1. A plaintiff need not make demand on the corporation when to do so would be futile. *Brooks v. Land Drilling Co.*, 564 F.Supp. 1518 (D.Colo. 1983); *Van Schaack v. Phipps*, 38 Colo. App. 140, 558 P.2d 581 (1976). It adequately appears from the face of the complaint that any demand would have been futile in this case.

■■■ These defendants further argue that all of the plaintiffs' state law claims should be dismissed because they are pendent state claims. Exercise of pendent jurisdiction over claims which arise out of a common nucleus of operative facts as the federal claims is within the discretion of the trial court. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In light of the interrelationship between the plaintiffs' state law claims and their standing to bring their federal claims, I find and conclude that the state claims should not be dismissed in this case.

Western and Hydro have also moved to dismiss the plaintiffs' First, Fifth, and Seventh Claims for Relief on the ground that they fail to state claims upon which relief can be granted. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Keeping this high burden in mind, I will address these claims for relief.

The First Claim for Relief alleges that the defendants have conspired to and have employed a manipulative or deceptive device to defraud the plaintiffs in connection with the exchange of Western Consortium stock for the Sweetwater water rights, in violation of § 10(b) of the 1934 Act. Defendants, citing *Santa Fe Industries v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), argue that the plaintiffs have failed to state a claim upon which relief can be granted because this claim concerns only an alleged breach of fiduciary duty which, without any factual support that the defendants employed a "manipulative or deceptive device," is not cognizable under § 10(b).

■■■ I agree with the defendants that the plaintiffs have not adequately pleaded a § 10(b) claim in their First Claim for Relief. Plaintiffs have alleged only in conclusory terms that the defendants employed a manipulative and deceptive device in connection with the transfer of the Sweetwater water rights. There can be no § 10(b) claim arising out of this transaction unless such manipulation and deception occurred. While the complaint does allege that the transfer was made over the objections of Farmer, there is no allegation that Farmer, or anyone else, was subject to a manipulative or deceptive device in conjunction with the transfer. Plaintiffs may file an amended complaint within twenty days

to cure this deficiency, if they can do so consistently with Fed.R.Civ.P. 11.

With respect to the Fifth Claim for Relief, the defendants correctly point out that the plaintiffs have failed to allege that the defendants used any means or instrumentality of interstate commerce. Plaintiffs may amend their complaint within twenty days to so allege, if the facts support such an allegation.

 Finally, these defendants argue that the Seventh Claim for Relief, for violation of RICO, has not been pleaded with sufficient particularity. Inasmuch as RICO claims are based on fraud, they must be pleaded with the specificity demanded by Fed.R.Civ.P. 9(b). *Saine v. A.I.A., Inc.,* 582 F.Supp. 1299 (D.Colo.1984); *Noland v. Gurley,* 566 F.Supp. 210 (D.Colo.1983); *Haroco, Inc. v. American National Bank and Trust Co. of Chicago,* 747 F.2d 384 (7th Cir.1984). In their complaint, the plaintiffs have not even stated the particular subsection of 18 U.S.C. § 1962 (1982) under which they are proceeding. Neither have they alleged with any particularity the nature of the pattern of racketeering alleged to have violated RICO. This claim is subject to dismissal, but the plaintiffs may amend their complaint within twenty days to specifically allege the particular acts which constitute "racketeering activity" and the "enterprise" through which the pattern of racketeering was carried out. *See Sedima, S.P.R.L. v. Imrex Co.,* —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346, (1985). If the plaintiffs intend to plead and prove violations of any subsection of 18 U.S.C. § 1962 other than subsection (c), they shall so state in their amended complaint and shall plead that violation with particularity as well.

With respect to the argument that the statute of limitations bars the plaintiffs' RICO claim, I reserve ruling until this issue has been more fully briefed.

III. *Motion by the Defendants Thomas Rhoades and the Tianna Corporation to Dismiss.*

The motion to dismiss filed by the defendants Rhoades and the Tianna Corporation is denied. With the exceptions noted above, the plaintiffs have adequately pleaded claims for relief for violation of federal and state securities laws and RICO. The amendments suggested with respect to Western and Hydro should cure any pleading deficiency as to these defendants as well. Whether the plaintiffs can prove their allegations is an issue to be resolved at trial. I reserve ruling on the issue of whether the statute of limitations has run on any of the plaintiffs' claims until the issue has been more fully briefed.

IV. *Motion by the Defendant Sandia Savings and Loan Association for Judgment on the Pleadings.*

Defendant Sandia Savings and Loan Association has raised one additional issue not raised by the other defendants. Sandia argues that the Fourth Claim for Relief, for conversion, fails for two reasons to state a claim upon which relief can be granted. It argues first that the mere taking of a security interest in property does not give rise to a claim for conversion. It further argues that the claim must be dismissed because under Colorado law, the right to use water is real property, and there can be no conversion of real property.

 I agree with Sandia's second argument, and therefore dismiss the conversion claim as against this and all defendants. It is clear that under Colorado law, the right to use water is an interest in real property. *West End Irrigation Co. v. Garvey,* 117 Colo. 109, 184 P.2d 476 (1947). The Fourth Claim for Relief seeks recovery of the Sweetwater water rights free and clear of all encumbrances. Clearly, this is a claim for recovery of a usufructory right in water which is real property. An action for conversion will not lie for damage to real property. Prosser and Keeton, *Torts,* § 15 (5th Ed.1984).

Accordingly, it is ordered that the defendants' motions for judgment on the pleadings or to dismiss for lack of subject matter jurisdiction are denied. Plaintiffs are granted twenty days to amend their

complaint to conform with the requirements of this order. Failure to do so will result in dismissal of the First, Fifth, and Seventh Claims for Relief. Defendants Western Consortium Inc., Hydro Transfer Inc., Thomas Rhoades, and the Tianna Corporation's motions for judgment on the pleadings are denied. The plaintiffs' Fourth Claim for Relief is dismissed with prejudice. A hearing on all remaining motions will be held on Wednesday, October 30 at 10:00.